SILBERMAN et al. v. UNITED STATES.
HALE et al. v. SAME.
Civ. A. Nos. 3198, 3199.

District Court, D. Massachusetts.

May 26, 1947.

John I. Robinson, of Springfield, Mass., for plaintiffs Silberman and others.

Thomas H. Mahony, of Boston, Mass., for plaintiffs Hale.

William T. McCarthy, U. S. Atty., Harold G. Jackson, Asst. U. S. Atty., and Philip P. A. O'Connell, Sp. Asst. to U. S. Atty., all of Boston, Mass., and Charles M. Ire-

lan, of Washington, D. C., for United States.

SWEENEY, District Judge.

In these actions the plaintiffs seek to recover under the Tucker Act, 28 U.S.C.A. § 41(20), for the value of certain personal property alleged to have been taken by the United States in connection with a condemnation proceeding in which the United States acquired an interest in realty owned by them. The United States denies that it took the personal property in question and avers that, if such a taking in fact occurred, it was merely a tortious act of an employee or officer of the United States for which it has not consented to be sued. The United States filed a counterclaim against these plaintiffs but offered no evidence in support of it. In reaching my decision in these cases, I have recourse to my memory of what transpired at the trial of the land condemnation cases between these same parties.

Findings of Fact.

On October 17, 1939, the United States of America instituted a condemnation proceeding in this Court for the acquisition of the fee simple title to certain land owned by these plaintiffs. This land, with other adjacent land, went into the making of Westover Field. Prior thereto, the plaintiffs had been using the land in the raising of tobacco, and there were located in the ground numerous poles which were used to support the tents covering the tobacco plants while they were growing. The poles were set in the ground about 20 feet apart, and were connected by wires. In the Silberman taking, there were about 155 acres which were covered with poles and wires, while in the Hale taking there were about 120 acres covered with poles and wires.

One Lieutenant-Colonel Murdock A. Mc-Fadden was in immediate charge of the acquisition, and he dealt with the landowners. The plaintiffs testified, and I find as a fact, that McFadden told them and other landowners that the poles in the ground were not to be removed, and that they were part of the realty. I find that, under date of November 6, 1939, McFadden sent these plaintiffs a letter advising them that, when

they removed personal effects from the premises, extreme care should be exercised to avoid the removal of, or damage to, any real property. McFadden's interpretation that the poles were a part of the realty and his letter with regard to the removal of personal property are not inconsistent, since these plaintiffs had other personal property located throughout the realty. This decision deals only with the poles which were set in the ground. There can be no recovery for other property, such as lumber in the sheds or machinery not attached to the ground. This was clearly personal property which could have been removed under the authority of the McFadden letter.

When the condemnation cases were tried before me I refused to receive evidence as to the value of the poles and wire, ruling that such property was personal property and was not within the terms of the condemnation proceedings, which referred only to realty. The Government took no exception to that ruling. It was the understanding of all the parties at that time that the question of the landowners' recovery of the value of the poles and wire would be taken up in another proceeding. I did not then understand that it was the Government's position that it was not liable for the taking of the poles and wires in some form of action. I understood its objection to be that, technically, the question of the value of the personal property did not belong in the condemnation proceedings. What the Government did with the poles and wires in question did not appear in evidence, but I find that the poles and wires were not returned to these plaintiffs by the Government, and that no tender of their value has been made. I find the value of the poles and wire which the Government—through its agent, McFadden—took from these plaintiffs, to be $30.00 per acre.

The main defense of the Government, that the taking of the poles and wires was McFadden's own tort for which it is not responsible, does not appeal to this Court. In the first place, the Government had clothed McFadden with the apparent authority to take the poles and wires. What individual citizen, in time of war, is going to run contrary to the directions of an army officer in a matter of this nature? The Government acquired the poles and wires through McFadden, and since they were things with a definite value it must be presumed that it did not dissipate them without getting some use or value from them. The Government does not contend that McFadden kept the poles for himself—it merely seeks to avoid liability because it did not specifically authorize him to take the poles and wires.

If I were to hold that the taking of these poles and wires was a mere tort on the part of McFadden, it would still seem to me that the Government would be liable under the Tucker Act for the retention of them. In United States v. North American Transportation & Trading Company, 253 U.S. 330, 333, 40 S.Ct. 518, 519, 64 L.Ed. 935, it was stated that "When the government, without instituting condemnation proceedings, appropriates for a public use, under legislative authority, private property to which it asserts no title, it impliedly promises to pay therefor.", and the case of United States v. Great Falls Mfg. Co., 112 U.S. 645, 5 S.Ct. 306, 28 L.Ed. 846, was cited, with other cases. The Secretary of War was clothed with the authority to take this property. He, through his agent, McFadden, represented to these landowners that he was, in fact and in law, taking the poles and wires as part of the realty. As a result of this misrepresentation of a conclusion of law, these people, being unable to withstand his authority, gave up their property to him. The Secretary of War had clothed McFadden with ostensible authority to take their property. It comes with little grace for the Government to say now, because I ruled in its favor on the question whether this property was realty or personalty, that, although it took the property through its agent, McFadden, acquired it and presumably still has it or its value, it is not liable. The case of Forest of Dean Iron Ore Co. v. United States, Ct. Cl., 65 F.Supp. 585, in which recovery was allowed for crushed rock, taken under circumstances similar to these is squarely in point, and while this Court bases its decision upon reasoning a little different, it nevertheless reaches the same conclusion.

### Conclusions of Law.

I conclude and rule that there was a taking of the plaintiffs' property within the meaning of the Fifth Amendment to the Constitution of the United States. I conclude and rule that, within the meaning of the Tucker Act, there was a contract between the United States and these plaintiffs to pay for the property taken. I conclude and rule that, the United States having clothed McFadden with ostensible authority to take this property, the plaintiffs had a right to rely upon such authority, and that the United States is therefore liable to these plaintiffs. The plaintiffs, Silberman et al., are entitled to recover the sum of $4,650.00, together with interest at the rate of 4% per annum from October 17, 1939, not as interest but as a part of just compensation. The plaintiffs Hale et al., are entitled to recover the sum of $3,600.00, together with interest at the rate of 4% per annum from October 17, 1939, not as interest but as a part of just compensation.

Judgments are to be entered in accordance with the above.