**6**

**IVEY et ux. v. UNITED STATES.**
Civ. A. No. 928.

United States District Court.
E. D. Tennessee, N. D.
Jan. 31, 1950.

Jerome G. Taylor, of the firm of Taylor & Badgett, Knoxville, Tenn., for plaintiffs.

Otto T. Ault, U. S. Atty., Chattanooga, Tenn., Ferdinand Powell, Jr., Asst. U. S. Atty., Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Plaintiffs, who are husband and wife, commenced this action under Title 28 U.S. C.A. § 41(20), which is sec. 1346(a) (2) of new Title 28, to recover the value of 16,784 feet of logs, alleged to have been taken and used by defendant. Only the plaintiffs introduced direct proof. Any data in defendant's possession as to the logs continues there, understandably so when it is considered that disposition of the logs was a minor incident in the mass of details which attended the development of the project now familiarly known as Oak Ridge, for which project plaintiffs' lands were condemned.

It appears that condemnation proceedings were commenced for acquisition of numerous tracts of land on October 6, 1942, and that judgments on declarations of taking were entered as to two tracts of land owned by plaintiffs on December 10, 1942, and February 2, 1943. Orders to vacate, served upon plaintiffs, were made effective as of January 5, 1943, and February 2, 1943.

Prior to commencement of the condemnation proceedings, plaintiffs had cut the logs here in question, and some of them had been collected in piles for loading. Shortly after the commencement of condemnation proceedings, certain work was done by agents of defendant with a view to determining value. Included in that work was an appraisal of the standing timber on plaintiffs' lands. On October 10, 1942, a man named Flautt who represented himself to plaintiffs as a Government timber appraiser came upon their land to appraise their timber. On that occasion mention was made to him by plaintiffs of the logs which had been cut, and plaintiffs were instructed by Flautt to leave the logs on the land, assuring them that the Government needed and would pay for them. In connection with litigation as to value of lands taken at Oak Ridge, Flautt appeared as a witness for the Government. Mrs. Ivey, one of the plaintiffs, testified at the hearing here that Flautt said at the time he testified for the Government in the prior litigation that he was a Government appraiser. Counsel for defendant objected to this testimony as to what Flautt said, and the records of the prior proceedings were not introduced. Testimony that the Government used him as a witness and qualified him as a Government timber appraiser was not incompetent as hearsay, and that was the significance of Mrs. Ivey's testimony. It corroborates the representation he made to plaintiffs that he was a Government timber appraiser.

Orders to vacate served upon plaintiffs required them to vacate immediately as of the named dates. They complied with the orders between the two effective dates, namely, during the last week in January, 1943. About February 1, 1943, they attempted to go back onto the land to remove some remaining chattels but were turned back by area guards.

As to what became of the logs, the evidence is in part circumstantial. A prime contractor with the Government was Stone & Webster Engineering Corporation, which did construction work within the Oak Ridge area on a cost-plus basis. Orville Taylor was an employee of Stone & Webster who drove a fuel supply truck. This witness testified that he knew the location and ownership of plaintiffs' tracts of land; that he had been on both tracts; that he refueled a crane on the larger of the two tracts; that the crane was being operated in the loading of logs onto a Stone & Webster truck; that Stone & Webster owned a sawmill located on the project area; that this was the only sawmill on the area, and that he refueled the tractor which ran the sawmill.

Witness Millard Lane testified that he was a timber cutter employed by Stone & Webster; that after plaintiffs vacated their lands he helped to cut logs thereon; that he saw logs on the lands which had already been cut and skidded; that he saw some of those logs being loaded on Stone & Webster trucks, and that at quitting time he rode on one of the trucks carrying logs from the Ivey lands to the Stone & Webster sawmill. What became of the logs thereafter is indicated with only a fair measure of assurance. Both of these employees of Stone & Webster testified that lumber was used on the project by Stone & Webster in connection with concrete construction work. It was stipulated by counsel that the prime contract above mentioned provided for reimbursement of the prime contractor for materials furnished by it, also that the Government had an option of furnishing such of the construction materials as it desired to furnish.

On October 10, 1942, following the conversation between Flautt and plaintiffs, Mr. Ivey mailed to Flautt a letter in which he gave an estimate of the number of feet of logs which had been cut and which remained on the Ivey lands. His tentative estimate was 12,446 feet. The actual measurement, subsequently made by plaintiffs, gave a total of 16,784 feet. The logs consisted of pine, cedar, oak, poplar, and walnut. Plaintiffs, who have worked together for several years in the logging and lumber business, testified that the logs had a market value of $50 per thousand feet.

No witnesses were introduced by the Government, and the evidence presented by plaintiffs was not rebutted.

Plaintiffs have received no payment from any source for any part of the logs. Plaintiff A. G. Ivey filed a claim with the Government which bears notarization date of May 24, 1945, for $800, in which he stated: "This claim is for timber cut and part of it skidded on my farms that were taken over by the War Department * * *." There is no documentary evidence of what action was taken with respect to the claim, but the open-court testimony is, that the claim was rejected.

After the last witness was examined, counsel for plaintiffs asked the Court to take judicial notice that conditions at the Oak Ridge project were in confusion during the period that is here material. It is not necessary for the Court to rule on that request. The record itself discloses that haste and confusion existed.

Counsel for the Government moved for judgment. The Court overruled the motion and called upon counsel to state his reasons why judgment should not be entered for plaintiffs. The main reasons stated were in substance that there is no showing that the Government got the benefit of the logs, and that an inference that the Government got the benefit is not justified. His cross examination of witnesses indicated a further and basic position that no contract, express or implied, existed between plaintiffs and defendant.

Following the arguments, the Court announced that it would prepare a memorandum, directing entry of judgment for the plaintiffs.

By their pleading, the plaintiffs rest their cause of action primarily in contract, although they do not specifically confine it there. Affirmative defenses in the answer are that plaintiffs abandoned the logs; also, that failure of plaintiffs to remove the logs was in violation of the orders to vacate, any injury sustained by them on account of the logs being due, therefore, to their own delinquency, and not to any taking or appropriation by the Government.

Despite the scarcity of clear evidence, there is one outstanding fact in the case, namely, that plaintiffs lost their logs. The loss was not through any fault of their own, unless fault can be read into their confidence in the Government and in the person who represented himself to be a Government agent. There is no evidence of abandonment, or of an intention to abandon the logs.

■ Whether a contract existed between plaintiffs and defendant has both an affirmative and a negative significance. If no contract existed, then circumstances point to a conversion or taking of plaintiffs' property. It is not necessary for plaintiffs to show that the Government got the benefit of the logs; it is sufficient to show that because of a taking by the Government, tortious or otherwise, the plaintiffs were deprived of them. That would be true, though the Government destroyed them. United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390. It would also be true if the Government made it possible for another to take the benefits of them. United States v. Peck, 102 U.S. 64, 26 L. Ed. 46.

■ This result appears in another form where the sovereign takes specific property and under the principle of exclusion, not necessarily tortious, takes other property which was not specified in the formal acquisition. Under the Fifth Amendment, such a taking requires compensation. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

■ In the case before the Court, Flautt instructed plaintiffs to leave their logs on the land and assured them that the Government would pay for them. Though he may not have been an authorized contracting officer, plaintiffs relied on his representation and left their logs in place. There is no showing that the Government ever repudiated or disaffirmed his representation. The only reasonable conclusion is that the logs were made into lumber and the lumber used on the Oak Ridge project,

whose land and buildings the Court judicially knows were and are owned by defendant. While the Court sees in the situation a basis for implying a promise on the part of defendant to pay for the logs and sustaining a cause of action under section 41(20) of Title 28, it is not necessary to base the decision on that ground alone. An obligation to pay arises from the exclusion to which plaintiffs were subjected. Between December 10, 1942, and January 5, 1943, there was little time, and no incentive, for removal of the large number of logs located on the condemned lands. As to one of the tracts, the order of possession was retroactive, effective as of several days prior to its service. Plaintiffs vacated the lands—not immediately, for exact compliance with the orders was a physical impossibility—in the latter part of January, 1943. When they tried to go back upon the land about February 1, 1943, to remove some remaining personal property, they were not permitted to enter. While their exclusion on that occaion did not relate specifically to the logs, it did show the situation that existed at that time. The Court judicially knows what is common knowledge in the counties surrounding Oak Ridge, namely, that from its beginning it was a closely restricted area. When all of the circumstances are put together, a taking of the logs by the Government is shown, for which under the Fifth Amendment the defendant owes compensation. See, as reaching a similar result, Silberman et al. v. United States, D. C.D.Mass., 71 F.Supp. 895; Forest of Dean Iron Ore Co. v. United States, 65 F.Supp. 585, 106 Ct.Cl. 250.

Plaintiffs have sued for $1500. They have testified that the logs had a value in place of $50 per thousand, which would give them a value of $839.20 for the 16,784 feet. However, their formal claim, filed as plaintiffs' Exhibit No. 1, shows the same footage but places the value at $800. The Court deems the last figure to be the most acceptable and awards judgment in that amount.

Let the necessary order be prepared.