Thomas A. Aurelio, J.
This action for injunction is brought under section 368-d of the General Business Law of the State of New York. It is commonly referred to in the “ Anti-Dilution Statute ” and provides as follows: “ 368-d. Injury to business reputation; dilution. Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.”
The plaintiff, Cue Publishing Co., Inc., hereinafter referred to as Cue, is the owner and publisher of Cue Magazine, Colgate- *163 Palmolive Company, the defendant and hereinafter referred to as Colgate, is the multi-million-dollar publicly-held corporation, known throughout the world as a manufacturer of toothpastes, soap and detergent products as well as other related items.
There is no dispute concerning the salient facts and features in this case.
Since about 1934 plaintiff has published Cue Magazine which serves the public as a guide to dining, entertainment, sports events, attractions and general “ goings on ” in the City of New York and the surrounding suburban areas. It is published weekly and enjoys a current weekly circulation of about 200,000, which is the result of a gradual process of expansion over the years. Originally, it carried weekly information on New York motion picture programs. It later expanded to include the legitimate theatre and reviews. Since World War II, Cue has further expanded to advertise and recommend good dining places in and about the area comprising its “ sphere of influence ”. In about 1950, to further its importance, popularity and publicity, Cue introduced its “ seal of approval” for display by restaurants, night clubs and resorts. The seal is about six inches in diameter and bears the legend 11 Approved by CUE ’ ’ — and the year. The seal is displayed at the entrance to some of the finest restaurants and night clubs in the city. Thus it is intended to, and no doubt does, serve as a promotional aid to Cue as well as for those establishments displaying the Cue 1‘ seal of approval ’ ’.
As time went on, editorial features have been added to Cue. These include regular sections on travel, television, EM radio, recordings, sound tapes, World’s Fair, etc. In 1963, a 300-page guide to New York City entitled “ Cue’s New York ” was published and arrangements were made for distribution throughout the country. Suffice it to say that the management of Cue is alert to legitimate promotional ventures which will have its objective an association of Cue with entertainment, travel, dining and generally, “ the finer things in life.”
An analysis of Cue readers has more or less established that Cue exerts its greatest influence upon the well-educated upper middle classes in what is popularly known as the Metropolitan New York area. <
During the past years Cue’s weekly circulation increased from about 1,500 to its current 200,000. Cue operated at a loss prior to 1961, and now for the first time the magazine is coming into its own and it anticipates a substantial operating profit for 1964 — about $200,000.
*164 Plaintiff first registered the name “ Cue ” in the United States Patent Office in 1935. It was reregistered under the “ Lanham Act ” (U. S. Code, tit. 15, § 1051 et seq.) in 1953. The “ Cue ” trade-mark was also registered under the statutes of New York, Connecticut, Massachusetts and New Jersey. In connection therewith, the court is satisfied that plaintiff has diligently proceeded to protect its name and mark against intrusion by another publication (Cue Pub. Co. v. Leo Shull Pub., Civil #46-633, U. S. D. C., Southern Dist., N. Y., 1948), and persons allied in the field of entertainment (Cue Pub. Co. v. Kirshenberg, 22 Misc 2d 188).
The defendant Colgate, as stated at the outset, is an important financially-sound and well-known firm in the business of manufacturing and selling soaps, detergents, toothpaste and other toiletries. Its reputation in the industry is obvious and requires no comment. In 1939, Colgate registered the name “ Cue ” with the United States Patent Office for its line of dentifrice products. At or about the same time, it registered ‘ ‘ Cue ” as a trade-mark with the States of New York, New Jersey, California, Illinois; and since then, defendant has also registered “Cue” with numerous countries throughout the world. In 1939, Colgate introduced its “ Cue ” to the market as a liquid dentifrice. At that time, Cue Magazine wished its namesake “ success and happiness ”. The product was regularly advertised in New York City and throughout the country. While it had produced a modest profit for defendant during the ensuing years, in 1946 the marketing of Cue liquid dentifrice was voluntarily discontinued.
Colgate started to test market a “ Cue ” shampoo in 1953 in Syracuse, New York, and three other American cities. This product was likewise voluntarily withdrawn before launching any national campaign. In any event, Colgate protected and sustained its right to the “ Cue ” mark in accordance with the State and Federal registration regulations.
In 1940, the right of defendant to its use of ‘ ‘ Cue ” as a trade-mark on its liquid dentifrice was challenged in the Federal Court, Southern District of New York (Landith Labs. v. ColgatePalmolive-Peet Co., 35 F. Supp. 616). The court refused to grant a preliminary injunction, noting: “These [plaintiff’s] products are different in character from the defendant’s liquid dentifrice. ’ ’
Until about 1960 Colgate enjoyed a substantial portion of the national toothpaste market. At that time, Procter-& Cambie, defendant’s chief competitor, presented to the Council on Dental Therapeutics of the American Dental Association, the results *165 of clinical studies of its toothpaste containing stannous fluoride, which led the A. D. A. to recognize Procter & Gamble’s “ Crest ” toothpaste as an effective decay-preventive dentifrice. With such indorsement and the great merchandising power of Procter & Gamble, Colgate’s position in the dental toothpaste market was threatened. It thus became necessary for Colgate to take all necessary steps to counteract the growing sales and the attention which “ Crest ” began to enjoy.
Shortly thereafter, Colgate concentrated on and did develop a stannous fluoride toothpaste. It then began to work on the project of its effective introduction into the national market. After executive and advertising conferences, it was decided to name this new Colgate stannous fluoride toothpaste “ Cue Before its adoption, however, the opinion of Colgate’s counsel indicated no legal objection to the use of its trade-mark “ Cue ” as the name for the new toothpaste.
Defendant then proceeded to develop its package, advertising campaign and general problems of the introduction of “ Cue ” to the market. It was test-marketed in Dallas, Texas, in Syracuse, New York, and other cities of the United States. Subsequently, as a result of clinical studies which were submitted to the American Dental Association, its counsel on Dental Therapeutics in July, 1964, accorded “ Cue ” dental cream the same recognition it had previously granted to Procter & Gamble’s “ Crest ” toothpaste. Obviously, such pronouncement would enhance the marketing possibilities of ‘ ‘ Cue ’ ’ toothpaste. It was given wide publicity and served as a tremendous incentive for a huge introductory advertising campaign.
After the A. D. AAs recognition' of “ Cue ” toothpaste, plaintiff in August, 1964 wrote to defendant suggesting a conflict of “Cue” as its magazine trade-mark and “ Cue ” as a dental cream. Defendant’s answer to plaintiff denied any conflict in the two items, which prompted plaintiff to institute the instant action for an injunction.
Defendant intends to launch an advertising campaign which will entail an expense of approximately $10,000,000 during the first year. It is expected that approximately $1,000,000 of such sum will be expended in the Metropolitan New York area. At this juncture, defendant has invested some $2,500,000 in the development and introduction of “ Cue ” toothpaste.
Plaintiff’s claim for relief is essentially based upon three grounds: (1) dilution, (2) tarnishment and (3) confusion. These will be discussed in inverse order.
As to confusion: It is generally true under the laws of trademarks and unfair competition that where there is the likelihood *166 of confusion as to source or sponsorship of a product there may be a basis for injunctive relief. However, the existence of a general resemblance between trade-marks is not always sufficient to show infringement and the fact of similarity in and of itself is not sufficient to warrant equitable interference. The test is whether there is likelihood of confusion or deception (87 C. J. S., Trade-Marks, § 68; Kent & Sons v. Lorillard Co., 114 F. Supp. 621, affd. 210 F. 2d 953; Sunbeam Corp. v. Sunbeam Furniture Corp., 88 F. Supp. 8'52, affd. in part and revd. in part on other grounds 191 F. 2d 141, rehearing den. 191 F. 2d. 731; Polaroid Corp. v. Polarad Electronics Corp., 182 F. Supp. 350, affd. 287 F. 2d 492, cert. den. 368 U. S. 820; Dell Pub. Co. v. Stanley Pubs., 9 N Y 2d 126; Johnson & Son v. Johnson, 175 F. 2d 176).
Upon all the evidence adduced, the court finds no evidence of fraud, misrepresentation, deceit, “palming off”, or other unfairness on defendant’s adoption or intended use of the name “ Cue ” on its product. Plaintiff has neither shown any actual confusion or mistake on the part of the public arising from the simultaneous use of the mark “ Cue ” in their respective businesses nor is the court sufficiently satisfied or convinced that there will be a likelihood of such confusion or mistake on the part of the general public which would entitle plaintiff to the injunctive relief herein sought. Although plaintiff attempted to show possible confusion as a result of a test survey of “ Cue ” toothpaste and “ Cue ” magazine, the court was not favorably impressed with the methodology used for the survey or the reliability of the results obtained thereby.
As to tarnishment: plaintiff contends that Colgate’s advertising and promotion of the decay-preventive qualities of “ Cue ” toothpaste will create a variety of oral hygiene connotations for the name “ Cue ” (including therepeutie diet control) which are grossly inconsistent with and repugnant to plaintiff’s development and use of the name as a symbol of fine dining and other forms of pleasurable leisure-time activity; that the tarnishment of plaintiff’s name by creation of such unpleasant and inappropriate connotations results in a 'distinct form of injury to plaintiff’s mark and/or trade name.
In the opinion of this court such a claim by plaintiff is fantastic, farfetched and entirely without merit. It i,s unsupported by the evidence, and there is no analogy between the circumstances here involved and the authorities cited by plaintiff in its brief.
With respect to the latter, this court is not yet ready to apply the same connotation of the mark “ 'Cue ” to such world-famous names as Tiffany, Yale (as applied to the trade-mark for locks), *167 Rolls Royce, Bulova, Pkilco or the slogan of Budweiser Beer, “ Where there’s life — there’s Bud The court will take judicial notice of the fact that the foregoing marks have existed for a great number of years and that actually millions of dollars have been invested in good will and advertising to the point where a mere mention of the name will immediately cause an association of its product. Cue Magazine has not yet achieved the pleasure of such fame. As a matter of fact plaintiff’s trademark registrations of “ Cue ” describe it — “ the weekly magazine of New York Life ”. Likewise the current editions of Cue Magazine bear the descriptive legend “for New York and Suburbs — the complete entertainment guide ’ ’.
The advertising plan which has been promulgated for “ Cue ” toothpaste will be geared to educate the public toward four objectives which are presented by visual aids: (1) regular professional care; (2) proper eating habits; (3) regular brushing; (4) cavity-preventive dentrifice. The court has examined the type of ad which will appear in national magazines. In my opinion it is attractive as well as informative and educational. It attaches no unpleasantness to the name “ Cue ” and cannot by the farthest stretch of the imagination be repugnant to or have a deleterious effect upon plaintiff’s business in the publication of its magazine.
Several of plaintiff’s witnesses who were restaurateurs gave testimony on the subject of continuing with their advertising in Cue Magazine if an intense campaign were begun for “ Cue ” toothpaste. The consensus of opinion resolved itself: if circulation and business would not be hurt, advertising would continue. Consequently, it is my opinion that plaintiff’s name will in no way suffer any tarnishment as a result of the intensive and extensive advertising campaign to introduce “Cue” as a toothpaste.
As to dilution: The great weight of plaintiff’s presentation of testimony in behalf of its cause of action is based upon what has been referred to as the dilution doctrine. Plaintiff contends that Colgate’s advertising campaign for “ Cue ” toothpaste will not merely ‘ ‘ dilute ’ ’ but ‘ ‘ inundate ’ ’ and 1 ‘ obliterate ’ ’ its name and trade-mark to the point where the name and mark ‘ ‘ Cue ’ ’ will spontaneuosly and instantly be associated with toothpaste.
The dilution doctrine protects the good will built up for a trade-mark from dilution by another’s mark. “ Its underlying rationale is that the gradual diminution or whittling away of the value of a trademark, resulting from extensive use by another of a mark identical or similar to that of the senior user, constitutes an invasion of the senior user’s property right in his *168 trademark and gives rise to an actionable wrong. The wrong, under this theory, is not dependent upon a showing of comparative relationship of the products or likelihood of confusion ’ ’ (Kent & Sons v. Lorillard & Co., 114 F. Supp. 621, 630-631, supra). While the right has been recognized the doctrine has been sparingly applied. In Yale Elec. Corp. v. Robertson (26 F. 2d 972, 974) Judge Learned Hand appeared to “ tone down ” the literal effect when he stated: “And so it has come to be recognized that, unless the borrower’s use is so foreign to the owner’s as to insure against any identification of the two, it is unlawful”. It would appear therefore, and the cases have so held, that to give effect to the dilution doctrine some measure of confusion must be present and in those cases where it was found to exist the rights of the senior user were upheld (Yale Elec. Corp. v. Robertson, supra; Skil Corp. v. Barnet, 337 Mass. 485; Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407; Standard Oil Co. of N. M. v. Standard Oil Co. of Cal., 56 F. 2d 973).
The decisions by our courts in cases involving the anti-dilution statute have likewise recognized some confusion, fraud, deception or “ palming off ” where injunctive relief has been granted (Greyhound Corp. v. Greyhound Securities, 26 Misc 2d 303; James Burrough, Ltd. v. Ferrara, 8 Misc 2d 819’; United Merchants & Mfrs. v. Amtex Fabrics, 29 Misc 2d 86). Plaintiff has not shown those elements to be present in this case.
There are other reasons which compel me to deny to plaintiff the relief which it now seeks. Plaintiff has urged the point that its mark “ Cue ” has achieved such “ distinctive quality ” that its use by another as a trade-mark will do it great injury. The evidence has failed to establish that ‘1 Cue ’ ’ has acquired such secondary meaning so that the general public will associate it only with plaintiff’s magazine. By that I do not mean to imply that it has not achieved a certain degree "of recognition in its field. However, as a common, simple dictionary word, plaintiff is not entitled to a monopoly of the mark (see Arrow Distilleries v. Globe Brewing Co., 117 F. 2d 347 and cases therein cited).
The case of Esquire, Inc. v. Esquire Slipper Mfg. Co. (139 F. Supp. 228) presented a set of facts most similar to the case at bar. Both parties to this controversy have cited it in their briefs. While the -court found itself not obligated to “pass on the question ” of enjoining defendant from the use of the name “ Esquire ” on its merchandise, it did permit the continued use of defendant’s corporate name.
However, the following language of the court at pages 232 to 233 would seem to indicate its inclination: “ While dilution has been described as the whittling away of a special meaning *169 through use by another, this is too broad a definition. I believe there must be at least some 1 likely confusion, ’ and that where there is none, a person proceeding on the strength of his own title is not guilty of dilution. Manufactured words may have a special individual meaning, and so may a combination of common words. But I will not hold that a single or solitary word in common use can be entirely appropriated from the public domain so that other users have no right. ’ ’
I am further convinced that defendant’s “ Cue ” toothpaste is so dissimilar, unlike, alien and foreign to plaintiff’s business that there will be no confusion in the public market and there will be no dilution, within the meaning of section 368-d of the General Business Law, of its trade-mark “ Cue — the complete entertainment guide ”. Under these circumstances, if plaintiff were to be granted the relief which it seeks, it would be tantamount to giving it “ Cue ” as against the whole world.
I am also satisfied that the status, standing and stature of the defendant corporation do not lend themselves to such reliance upon the efforts of the plaintiff for the upbuilding of the trademark “ Cue ”, as would suggest that this defendant now seeks to “ cash in ” on the good will attained by the plaintiff./ The latter finding has obtained in many cases cited by plaintiff (Tiffany & Co. v. Tiffany Prods., 237 App. Div. 801, affd. 262 N. Y. 482; Tiffany & Co. v. Boston Club, 231 F. Supp. 836; James Burrough, Ltd. v. Ferrara, 8 Misc 2d 819, supra; Greyhound Corp. v. Greyhound Securities, 26 Misc 2d 303, supra).
In the course of this decision, I have given the plaintiff the benefit of the doubt as to its senior use of the trade-mark “ Cue ”. However, the court is mindful of the fact that defendant has been a user of “ Cue ” over the past 25 years— perhaps not continuously. In any event, if no other factors were involved except the question of prior user, this in and of itself would not entitle plaintiff to exclusivity of the mark (Johnson & Son v. Johnson, 175 F. 2d 176, supra). ‘ ‘ But first user of a trade name composed of common words acquires no special preference thereby” (Schwartz v. Hampton, 30 Misc 2d 837, 838; Ball v. United Artists Corp., 13 A D 2d 133).
In conclusion therefore I find (1) that there is no likelihood of injury to plaintiff’s business reputation as a result of defendant’s intended use of “ Cue,” as its trade-mark; (2) that plaintiff has not shown that there will be any confusion if such use be permitted; (3) that defendant’s use of the trade-mark will not serve to tarnish plaintiff’s mark in the eyes of the public; (4) that plaintiff will not suffer any dilution of its mark within the meaning of section 368-d of the General Business Law; (5) that *170 plaintiff has not shown its mark to have acquired the distinct quality of a secondary meaning; (6) that “ Cue ” as a simple word of the English language is not subject to monopoly as a mark to the exclusion of all others; (7) that the unlikeness of the products involved does not permit injunctive relief of one against the other.
Accordingly, both plaintiff and defendant may use the word “ Cue ” as a trade-mark for its goods — plaintiff on its magazine; defendant on its toothpaste — without infringement of the rights of the other, and the complaint of the plaintiff is dismissed.
In view of the conclusion reached herein, a discussion of defendant’s 11 affirmative defenses would be academic and mere surplusage.