**GREENPOINT FINANCIAL CORP., Plaintiff,**

v.

**THE SPERRY & HUTCHINSON COMPANY, INC., and S & H Greenpoints.Com, Inc., Defendants.**

**No. 00 CIV. 4681(DAB).**

United States District Court, S.D. New York.

Sept. 19, 2000.

Pasquale A. Razzano, Fitzpatrick, Cella, Harper & Scinto, James M. Gibson, Fitzpatrick, Cella, Harper & Scinto, New York City, for Plaintiff.

Lisa M. Ferri, Hopgood, Calimafde, Kalil & Judlowe L.L.P., New York City, for Defendants.

## MEMORANDUM & ORDER

BATTS, District Judge.

Plaintiff GreenPoint Financial Corporation ("GFC") alleges that Defendants Sperry & Hutchinson ("S & H") and S & H Greenpoints.com's use of the name "GREENPOINTS" and GREENPOINTS.COM infringe on GFC's trademark and create likely confusion in violation of Section 32 of the Lanham Act and New York State statutory and common law. In addition, Plaintiff alleges that use of the marks constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act and various state statutes. Finally, Plaintiffs

allege that S & H's use of the marks dilutes the distinctive quality of GFC's allegedly famous mark in violation of Section 43(c) of the Lanham Act and New York General Business laws.

## I. FACTUAL FINDINGS

The Court incorporates the briefings by the parties and the record of the hearing of September 13–14, 2000 and assumes familiarity with the facts set forth therein. Plaintiff, primarily known as a savings bank in Brooklyn since 1868, has expanded into other areas of New York State and Connecticut, not only as a savings bank, but also specializing in mortgages. (Decl. Humphrey ¶¶ 2–3, 6. Supp. Decl. Humphrey ¶ 3). Since 1997, Plaintiff has expanded into mortgage lending and financing of manufactured housing and now has 24 mortgage offices and 45 housing finance offices across the country. (Decl. Humphrey ¶¶ 10, 15). In addition, Plaintiff offers banking services over the Internet. (Humphrey Decl. ¶¶ 20–21).

Plaintiff now seeks to prevent alleged infringement of what they claim to be their trademark, the word(s) "GREENPOINT", standing alone, by the Defendants. Defendants, historically equally well-known for their "S & H Green Stamp" program, which reached a national audience in the 60's and 70's, have used the term "Greenpoints" in conjunction with their marketing, on a national level, to potential clients of their gift redemption program. Despite historic references, it is clear to the Court that Plaintiff first claimed use of the registered term "GREENPOINT" in 1995 and Defendants first used "GREENPOINTS" in 1996. Notwithstanding Plaintiff's claimed first use of a stylized "GreenPoint" mark in 1995, Plaintiff presented evidence of advertising utilizing the phrase "The Green Point" as early as 1985. (Pl.'s Ex. 6).

The facts presented by the Plaintiff in their papers and at the hearing, do not support national use or recognition of GreenPoint with them. At best, the facts presented by Plaintiff raise the question of distinctive mark or secondary meaning under the New York State anti-dilution act. *See* New York Gen. Bus. Law § 368–d.

## II. DISCUSSION

### A. Preliminary Injunction Standard

"In cases involving claims of trademark infringement and dilution, as in other types of cases, a party seeking a preliminary injunction must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir.2000). "The movant need not show that success is certain, only that the probability of prevailing is 'better than fifty percent.'" *BigStar Entertainment v. Next Big Star Inc*, 105 F.Supp.2d 185 (S.D.N.Y.2000) (quoting *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985)).

"In the context of trademark ... injunctions, the requirement of irreparable harm carries no independent weight, as [the Second Circuit has] held that a showing of likelihood of confusion ... establishes irreparable harm." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir.1997) (citations omitted). "Proof of such confusion also serves as additional evidence with respect to the separate finding that must be made of plaintiff's likelihood of success on the merits." *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986). Finally, a likelihood of dilution establishes irreparable harm, because "[d]ilution is itself an injury which [cannot] be recompensed by money damages." *Deere & Co. v. MTD Prods., Inc.* 860 F.Supp. 113, 122 (S.D.N.Y.), *aff'd*, 41 F.3d 39 (2d Cir.1994).

However, "[s]ignificant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that

infringement [or dilution] alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985) (internal citations omitted)

■ Accordingly, because GFC delayed approximately 4 months in requesting injunctive relief, no presumption of irreparable harm exists.

### B. Service Mark Infringement

■ To prevail on a claim for infringement under the Lanham Act, a plaintiff must show that (1) it has a distinctive mark subject to protection; and (2) the defendant's mark results in a likelihood of confusion. *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1508 (2d Cir.1997).

#### 1. *Protectability of the Mark*

■ Plaintiff's "GREENPOINT" mark is "descriptive of the geographic origin of a product," here Greenpoint, Brooklyn, and "will not receive trademark protection absent proof of secondary meaning." *Forschner Group, Inc. v. Arrow Trading Co., Inc.,* 30 F.3d 348, 348 (2d Cir.1994); (Humphrey Decl).

■ The "term has acquired a secondary meaning in its particular market [if] the consuming public primarily associates the term with a particular source." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1040 (2d Cir.1992).

■ Six factors have been identified to help establish secondary meaning. They are (a) advertising expenditures [1]; (b) consumer studies linking the mark to a source; (c) unsolicited media coverage of the product; (d) sales success; (e) attempts to plagiarize the mark; and (f) the length and exclusivity of the mark's use. *See Centaur Communications, Ltd.v. A/S/M/ Communications,* 830 F.2d 1217, 1222. While each factor does not have to be proved and no single factor is determi-

native (*id.*), Plaintiff must satisfy a "heavy" burden because "[p]roof of secondary meaning entails vigorous evidentiary requirements." *20th Century Wear Inc., v. Sanmark -Stardust Inc.,* 747 F.2d 81, 90 (2d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985) (quoting *Ralston Purina Co. v. Thomas J. Lipton, Inc.,* 341 F.Supp. 129, 134 (S.D.N.Y.1972)).

■ The critical question is whether the term "GREENPOINT" had gained secondary meaning by the time S & H Greenpoints entered the market in 1996. *See PaperCutter, Inc. v. Fay's Drug Co.,* 900 F.2d 558, 564 (2d Cir.1990). To establish secondary meaning within a disputed market, courts have also considered whether the senior user had established secondary meaning throughout the *relevant* disputed marketplace. *See, e.g., Centaur Communications,* 830 F.2d at 1226 (strength of a mark should be examined in its commercial context); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.,* 875 F.Supp. 966, 977 (E.D.N.Y.1994) (national advertising campaign established national secondary meaning).

Plaintiff has not put forth evidence demonstrating that GreenPoint has achieved secondary meaning either in New York or nationally. While its survey, assuming its validity, may demonstrate some name recognition in the New York metropolitan area for the term "Greenpoint Bank", this is insufficient to establish secondary meaning, for either federal or state infringement purposes, for the term "GREENPOINT". In addition, the flaws in the survey, from lack of objectivity in creation and determination of parameters because of the involvement of Plaintiff's law firm, lack of a control group, and the addition of questions a third of the way into the sampling, cast serious doubts on the value of the survey and any conclusion the Plaintiff seeks to draw therefrom.

---

1. While Plaintiff has submitted Plaintiff's Exhibit 6, showing advertisements using the term "Green Point" in 1985, it has not submitted evidence documenting expenditures.

In addition, although Plaintiff has offered some evidence of advertising throughout the New York metropolitan area, it has not demonstrated exclusivity within the region. A quick glance through the Brooklyn phone directory establishes that more than fifty other establishments conduct business under the "Greenpoint" name. Such significant third party usage also undermines Plaintiff's claim of secondary meaning. *See, e.g., Allied Maintenance Corp. v. Allied Mechanical, Inc.,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162, 198 U.S.P.Q. 418, 422 (1977) (noting numerous other phone directory listings in denying exclusivity); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 410 (S.D.N.Y.1974) (same). Accordingly, for the reasons stated above, the Court remains unconvinced that the public associates the term "GREENPOINT" with Plaintiff's banking service.

### 2. *Likelihood of Confusion*

In order to succeed in a trademark infringement suit, Plaintiff must also prove that "there is a likelihood of confusion, or, in other words, that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Gruner,* 991 F.2d at 1077. There must be an "appreciable number" of confused purchasers to sustain this burden. *Mushroom Makers, Inc. v. R. G. Barry Corporation,* 580 F.2d 44, 47 (2d Cir.1978).

■ Courts analyzing likelihood of confusion must consider the eight-factor *Polaroid* test articulated in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.1961). The factors are a) strength of mark; b) degree of similarity between the marks; c) the proximity of the products; d) the likelihood that the senior user of mark will bridge the gap; e) evidence of actual confusion; f) the junior user's bad faith *vel non* in adopting the mark; g) the quality of the junior user's product; and h) the sophistication of the relevant consumer group.

■ In the context of the Internet, the Ninth Circuit has considered three factors: (1) the virtual identity of the marks; (2) the relatedness of plaintiff's and defendant's goods; and (3) the simultaneous use of the web as a marketing channel, as "most important." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1054–58 (9th Cir. 1999).

### a) Strength Of Mark

■ A mark's strength is assessed by (1) the degree to which it is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace. *W.W.W. Pharmaceutical Co. v. Gillette Co.,* 808 F.Supp. 1013, 1022 (S.D.N.Y.1992), *aff'd,* 984 F.2d 567 (2d Cir.1993). The strength of a mark should be examined in its commercial context. *Centaur Communications,* 830 F.2d at 1226, and the geographic scope of Plaintiff's mark will impact its strength of mark. *See W.W.W. Pharmaceutical,* 984 F.2d at 567.

The GreenPoint mark is not inherently distinctive because it is a descriptive geographic term used by many businesses in the same geographic area. (Decl. Garrod, Ex. 3 (98% of the 214 active New York corporations using the "Greenpoint" name belonged to unrelated third party users); Def's Court Ex. J (identifying use of "Greenpoint" name by three insurance companies located in Brooklyn and Queens)). Further, as previously stated, Plaintiff has failed to established its secondary meaning. Use of Plaintiff's mark is primarily limited to the New York metropolitan area. Finally, there has been no showing that use of the term "GreenPoint," without the modifier "Bank" triggers an association with the Bank for any significant percentage of the public.

### b) Degree of Similarity Between the Marks

■ Similarity is weighed in light of whether (1) the marks appear in connection with other identifying information,

and (2) the total effect of the designation. *W.W.W. Pharmaceutical,* at 573. Where a similar mark is used in conjunction with a company name, the likelihood of confusion is lessened. *McGregor–Doniger v. Drizzle,* 599 F.2d 1126, 1134 (2d Cir.1979).

■ When comparing similar domain names the "proper starting point should be the parties' respective trademarks, rather than domain addresses. The trademarks provide a broader dimension for analysis. Website addresses themselves, characterized by the style of uniformly lower case lettering and compressed wording, do not adequately express certain nuances of common meaning and understanding of words in the marks at issue in this case." *BigStar Entertainment, Inc. v. Next Big Star Inc.,* 54 U.S.P.Q.2d 1685, 1698, 105 F.Supp.2d 185 (S.D.N.Y.2000).

In terms of similarity between the marks, at least the proposed trademark "Green Points" is similar to Plaintiff's stylized "GreenPoint." Defendants have not demonstrated that the company name S & H always precedes the "Green Points" mark. Furthermore, "greenpoint.com" and "greenpoints.com" are similar. However, to the degree that some confusion may inevitably arise from the proximity of the party's domain names, the Court believes the confusion would not be actionable because of the weakness of the other *Polaroid* factors.

c) The Proximity of the Products

"This factor addresses whether and to what extent the parties compete with each other." *Conopco, Inc. v. Cosmair, Inc.,* 49 F.Supp.2d 242, 251 (S.D.N.Y.1999) (citing *W.W.W. Pharmaceutical Co.,* 984 F.2d at 573). "In making this assessment 'the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal.'" *Id.* (quoting *W.W.W. Pharmaceutical Co* at 573).

S & H Greenpoints is a program allowing consumers to earn points toward a variety of merchandise and services. GreenPoint Financial is a banking and mortgage lending service. Although both operate on the Internet, the diversity of services offered, precludes a finding of likelihood of confusion.

Plaintiff attempts to mask the inherent differences between the two companies. While Plaintiff alleges in its brief that the parties provide similar products as Plaintiff provides "online banking ... while Defendants offer online services," *see* Mem. Law at 17, the services offered by the two companies are truly apples and oranges.

d) Bridging the Gap

This factor refers to the likelihood of Plaintiff's entry into Defendants' area of commerce.

Plaintiff deals in personal savings accounts, specialized mortgages and financing of manufactured housing. Plaintiff issues credits cards. Defendants provide no banking services and provide redemption of points for consumers who purchase products and services at institutions that are clients of the Defendant. One such client, includes a bank based in Boston that provides credit cards. The Court does not foresee, on the evidence presented, that the Plaintiff will engage in point redemption for consumer merchandise.

e) Evidence of Actual Confusion

Actual confusion means "consumer confusion that enables a seller to pass off his goods as the goods of another." *See Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 963 (2d Cir.1996) (quoting *W.W.W. Pharmaceutical Co. v. Gillette Co.,* 984 F.2d 567, 574 (2d Cir. 1993)). To show actual confusion the senior user must demonstrate that the alleged infringing party " 'could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.'" *Sports Authority, Inc.,* 89 F.3d at 963.

"[T]he relevant confusion is that which affects 'the purchasing and selling of the goods or service in question.'" *See Lang*

*v. Retirement Living Pub. Co.,* 949 F.2d 576, 583 (2d Cir.1991). As such, a suit for "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang,* 949 F.2d at 583.

Evidence supporting existence of actual confusion, includes "mistaken orders, complaints from customers or website visitors, market surveys or other signs of uncertainty reflecting actual consumer confusion." *See Big Star Entertainment, Inc. v. Next Big Star Inc.,* 54 U.S.P.Q.2d at 1705, 105 F.Supp.2d at 213.

Plaintiff's counsel concedes that the purpose of the survey evidence was to demonstrate dilution rather than actual confusion. Plaintiff's counsel states that the survey is "strictly a dilution study within the geographic area that was surveyed among the respondents that were surveyed."

For the reasons stated above, under the likelihood that the senior user will bridge the gap, the Court finds no evidence of the existence of actual confusion despite random e-mails to Plaintiff's bank from potential customers whom, in the Court's opinion, they would be better off without, inquiring about gift redemption.

f) The Junior User's Bad Faith *vel non* In Adopting The Mark

Based on the Defendant's history with S & H Green Stamps, there is no evidence of bad faith on the part of the Defendants in adopting their mark.

g) The Quality Of The Junior User's Product

There has been no evidence presented attacking the quality of the Defendants' product.

h) The Sophistication Of The Relevant Consumer Group.

As indicated at the hearing on September 13, 2000, the Court finds that the Plaintiff's consumer groups because of their specialized markets are not likely to be confused by a gift-redemption program.

If anything, the danger of confusion may lie in the Defendant's relevant consumer group.

3. *Conclusion–Infringement*

■ For the reasons stated above, the Court holds that there is no secondary meaning of "GREENPOINT" on a national or statewide level, making the mark generally weak outside of the greater metropolitan area.

Further, the Court concludes that, notwithstanding some evidence of consumer error, there is not likelihood of confusion between the respective marks. New York State Trademark Infringement likewise requires proof of likelihood of confusion.

GFC has failed to show "actual confusion." No purchases have been made in error and no diversion of goodwill has been shown. Isolated e-mails are, at most, indicative of initial consumer confusion. However, a business owner in search of a commercial mortgage is no more likely to seek out S & H Greenpoints' consumer rewards currency than an S & H customer is likely to redeem points for a soccer ball from GreenPoint Financial.

Finally, the notoriety of the "S & H Greenstamps" program further diminishes the likelihood of confusion. Accordingly, Plaintiff has failed to establish a likelihood of success on the merits or serious questions going to the merits on its federal or state statutory infringement claims.

C. Dilution

Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services." 15 U.S.C. § 1127.

As Professor McCarthy has stated:

To save the dilution doctrine from abuse by plaintiffs whose marks are not famous and distinctive, a large neon sign should be placed adjacent wherever the doctrine resides, reading: "The Dilution Rule: Only Strong Marks Need Apply."

4 *McCarthy on Trademarks* § 24:108 (2000). The Second Circuit recently reit-

erated the requirement of fame under the federal dilution statute. *See Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215–16 (2d Cir.1999).

### 1. *Federal Dilution*

■ The Second Circuit recently outlined the five necessary elements to a claim of federal dilution: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce: (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark. *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir.1999).

Concerning federal dilution, the term "fame" is used in its "ordinary English language sense." *Nabisco*, 191 F.3d at 215. "The geographic fame of the mark must extend throughout a substantial portion of the U.S." H.R.Rep. No. 374, 104th Cong., 1st Sess.1995, 1996 U.S.C.C.A.N. 1029, 1030–31 (cited in *Star Markets Ltd. v. Texaco, Inc.*, 950 F.Supp. 1030, 1034 (D.Haw.1996)).

While one district court has granted federal dilution protection for alleged fame within a several county area, *see Gazette Newspapers, Inc. v. New Paper, Inc.*, 934 F.Supp. 688 (D.Md.1996), the Court concludes that opinion is in conflict with Congressional intent. Operation within a five state region is the next smallest geographical extent found protected under the dilution statute. *Star Markets*, 950 F.Supp. at 1034 (citing *WAWA, Inc. v. Haaf*, 1996 WL 460083 (E.D.Pa. Aug. 7, 1996)).

■ Here, Plaintiff has conceded that it lacks fame outside of the tri-state, New York, Connecticut, and New Jersey area. Accordingly, Plaintiff cannot meet the fame requirement for federal dilution protection.

### 2. *State Dilution*

■ New York state dilution requires (1) a distinctive mark and (2) a likelihood of dilution. *Mead Data Central, Inc. v.*

*Toyota Motor Sales, USA*, 875 F.2d 1026 (2d Cir.1989).

■ While fame has not been required under the state statute, a mark must be "extremely strong" to merit protection. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992) (quoting *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983)). "[O]nly those trade names which are truly of distinctive quality or which have acquired secondary meaning in the mind of the public should be entitled to protection under the [state] anti-dilution statute." *Bristol–Myers Squibb Co. v. McNeil–P.P.C*, 973 F.2d 1033, 1049 (2d Cir.1992) (quoting *Allied Maintenance v. Allied Mechanical Trades*, 42 N.Y.2d 538, 546, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (N.Y.1977)). *See also, Cue Publishing Co. v. Colgate–Palmolive Co.*, 45 Misc.2d 161, 256 N.Y.S.2d 239 (N.Y.Sup.1965) (finding "CUE" magazine not a strong, distinctive mark and denying state dilution protection); *Sears Roebuck & Co. v. Allstate Driving School, Inc.*, 301 F.Supp. 4, 11 (E.D.N.Y.1969) (finding "ALLSTATE" auto insurance not strong or distinctive under New York statute).

Distinctiveness under the New York statute has also been defined as "uniqueness" or as describing a mark that has acquired a secondary meaning. *See Mead Data*, 875 F.2d at 1030 (citing *Allied Maintenance*, 42 N.Y.2d at 545, 399 N.Y.S.2d 628, 369 N.E.2d 1162).

Having found that "GREENPOINT" is descriptive and is unworthy of protection absent secondary meaning, the distinctiveness of the mark is not strong. On the basis of the evidence presented, the Court finds that "GREENPOINT" is neither unique nor has it achieved secondary meaning throughout New York State.

Because Plaintiff lacks a truly distinctive mark, it is unnecessary to reach the likelihood of dilution. However, it is clear that an evaluation of this factor would also dictate denial of the motion at this time.

When evaluating the likeliness of dilution under the state statute courts have applied the six-factor test articulated in *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A.*, 875 F.2d 1026, 1034 (2d Cir. 1989). Likelihood of dilution is evaluated based upon (1) similarity of the marks; (2) similarity of the products covered by the marks; (3) sophistication of consumers; (4) predatory intent; (5) renown of the senior mark; and (6) renown of the junior. *Id.* The Second Circuit recently called this six-factor test into doubt, at least as applied to the federal statute. *Nabisco*, 191 F.3d 208, 227. In addition to the *Mead* factors, the Court also analyzed: (1) distinctiveness; (2) likelihood of the senior users bridging the gap; (3) shared consumers and geographic limitations; (4) actual confusion; (5) adjectival or referential quality of the junior use; (6) harm to the junior users and delay by the senior user; and (7) effect of the senior's prior laxity in protecting the mark. *See id.*

Many of these considerations have been discussed above and the Court will not reiterate them here. However, the Court does note that there has been absolutely no evidence of predatory intent on behalf of the Defendants.

Turning to the additional factors outlined in *Nabisco*, Defendants have demonstrated the referential value of its mark, "Green Points," as descriptive of the accumulation of points necessary to redeem rewards as well as its value to them for its alleged association with the former "Green Stamps" program. Further, the geographic limitations of Plaintiff's mark coupled with its laxity in protecting the mark from other local users, weighs against Plaintiff. Finally, clear harm to Defendants would result through imposition of an injunction. For example, because of the unique nature of the Internet, prevention of Internet use in New York would effectively mean the termination of the web site nationwide, thus closing down Defendants' business.

Accordingly, Plaintiff has failed to demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits of its state dilution claim.

D. *False Designation of Origin; Lanham Act Section 43(a), 15 U.S.C. § 1125(a);*

15 U.S.C. § 1125(a) provides, *inter alia*, a "federal cause of action for false representation as to the origin of goods." The *Polaroid* factors, which are used to evaluate confusion in infringement cases, are also applicable in cases under 43(a). *Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993).

Thus, Plaintiff's False Designation claim is unlikely to succeed for the reasons previously stated.

E. Trademark Cyberpiracy; Lanham Act Section 43(d), 15 U.S.C. § 1125(d)

The purpose of the Anticybersquatting Consumer Protection Act (ACPA) is to "protect consumers and American businesses ... by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks..." *Sporty's Farm L.L.C. v. Sportman's Market, Inc.*, 202 F.3d 489, 495 (2d Cir.2000) (quoting S.Rep. No. 106–140, at 4).

Courts in the Second Circuit consider (1) whether plaintiff's mark is distinctive or famous; (2) whether the defendant had a bad faith intent to profit from the use of the mark; and (3) whether the marks in issue are identical or confusingly similar. *Sporty's Farm L.L.C. v. Sportman's Market, Inc.*, 202 F.3d 489, 495 (2d Cir.2000).

There is no showing of bad faith here, S & H has put forth a credible good-faith reason for its adoption of the Greenpoints mark—so that it may benefit from association with its previously operated "Green Stamps" program. Accordingly, Plaintiff has failed to demonstrate the likelihood of success on the merits or sufficiently serious questions going to the merits.

F. Remaining State and Common Law Claims

Plaintiff also brings claims for unfair competition and injury to business reputation by Defendants arising under N.Y. GBL §§ 360–k, 360–l and 360–m; unlawful and deceptive act and practices arising under N.Y. GBL § 349 and common law service mark infringement and unfair competition.

For the reasons previously stated, Plaintiff has failed to demonstrate the likelihood of success on the merits or serious questions going to the merits of any of its remaining claims.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motion for a Preliminary Injunction is DENIED. Plaintiff has failed to demonstrate the likelihood of irreparable injury in the absence of such an injunction and has failed to demonstrate a likelihood of success on the merits or raise sufficiently serious questions going to the merits.

The parties are to appear for a Rule 16 Conference on Thursday, October 12, 2000 at 10:30 A.M.

SO ORDERED.