METROPOLITAN OPERA ASSOCIATION, INC., Plaintiff, *v.* PILOT RADIO CORPORATION et al., Defendants.

Supreme Court, Special Term, New York County, February 17, 1947.

*Leon Lauterstein* and *Florence Morgenstern* for plaintiff.

*Bernard Hershkopf, Jerome S. Zurkow* and *Leon A. Mnuchin* for defendants.

SHIENTAG, J. Metropolitan Opera Association, Inc., has brought an action to restrain the defendants from using the name "Metropolitan Symphony Orchestra" or the name "Metropolitan" or any name or title calculated to have the tendency to cause the orchestra used by the defendants to be confused with plaintiff's orchestra. This motion is for a preliminary injunction asking for the same relief in advance of trial. Defendants are Pilot Radio Corporation and Isidore Goldberg.

In October, 1946, one Abramson, representing the defendants, stated to Keppel, the comptroller and acting secretary of plaintiff, that he was arranging for the making of home-use recordings of music for the Pilot Radio Corporation and that he wanted to use the plaintiff's orchestra and plaintiff's name "Metropolitan" in connection with these recordings. The recordings were to consist of a series of albums of symphonies, operas and other musical masterpieces. Keppel suggested that the proposal be put in writing and that Abramson should talk to the representative of the orchestra personnel, Mundy. Mundy stated that he could arrange for the hiring of the orchestra if

satisfactory arrangements were made with plaintiff. Abramson was the only one to represent the defendants before Keppel or Mundy.

On October 11th Abramson wrote Keppel a letter stating that there would be twelve albums which it was their desire to get out by Christmas. Abramson stated that Eric Leinsdorf, former conductor at the Metropolitan Opera, would conduct the orchestra. He wrote: " We think it would be of great advantage to the Metropolitan Opera Association to be connected with this series and it will also be of equal benefit to us to have the Metropolitan name associated with us. * * * I know these albums will be a credit to the Metropolitan and since these are for educational purposes would appreciate your permission to use the name. The name will be used in this form: ' Eric Leinsdorf conducting the Metropolitan Opera Orchestra ' ' Rudolph Ganz conducting the Metropolitan Opera Orchestra '."

Under date of October 18th, Keppel wrote Abramson confirming a previous telephone conversation: " I have been advised that we must reject your proposal. Your offer was definitely interesting to us and it is quite possible that something can be worked out in the future but our Finance Committee is reluctant to allow the use of our name without very careful consideration which is not possible in view of the shortness of time."

On November 8th, after the matter had been referred to Lewis L. Strauss, chairman of plaintiff's executive committee, Keppel again wrote Abramson rejecting the offer, saying: " This being the case, we have been advised to recommend that you proceed with your plans without using our name or counting on the Metropolitan endorsement."

Nothing further was heard by the plaintiff concerning this project until December 8, 1946, when an advertisement appeared in the *New York Times* magazine section of Sunday, December 8, 1946, announcing the appearance of defendant's album of masterpieces. The advertisement contained the statement: " featuring the Metropolitan Symphony Orchestra ". The music published in this album consisted of Haydn's " Farewell Symphony " and Greig's " Holberg Suite ". The statement inside the cover of the album referred to the conductor Leinsdorf as one who " astounded the musical world in 1940 when he was appointed conductor of the New York Metropolitan Orchestra at the age of 27 ".

The theory of the plaintiff is that the name " Metropolitan " has become uniquely associated with the plaintiff, that plaintiff's orchestra in past years has made recordings under plaintiff's name which have resulted in a substantial revenue to the plaintiff, that plaintiff is now negotiating with a prominent recording company for the right to use its name and orchestra in connection with recordings and sales of records and that the use of the name " Metropolitan Symphony Orchestra " by the defendants will seriously prejudice the sale value of the services of plaintiff's orchestra and may well do damage to the reputation of the plaintiff since plaintiff may otherwise be credited with the productions of the defendants which may or may not reflect credit upon the plaintiff.

It is unnecessary to repeat at length the story of the growth, development and reputation of the plaintiff. The Metropolitan Opera Association, Inc., is a nonprofitmaking venture in New York City; it is one of the institutions of our city which has an international reputation. The plaintiff's reputation and financial interests merit whatever protection the law affords to attempts of this sort to capitalize on the plaintiff's achievements. So well known is the plaintiff that I have no hesitation in taking judicial notice of the fact that the Metropolitan Opera or the Metropolitan Orchestra or the Met Orchestra are all normal ways of referring to the plaintiff and that the use of the words " Metropolitan Orchestra ", whether coupled with the words " Symphony " or " Opera ", is misleading when used by any group in New York not connected with the plaintiff. The claim that the word " Metropolitan " is a descriptive, geographical or generic name is without force under the circumstances of this case.

The defendants have gone far afield to claim that the plaintiff has waived the use of its name by permitting other groups to use the word " Metropolitan ". So far as I can see, there is only one group using the name under conditions which might be held to be a similar, improper use. Plaintiff, however, states that it was not aware of this use until defendant had drawn its attention to it. In any event, it is clear that the plaintiff has not taken such action as makes its name and reputation public property which can be traded on by anybody who wishes to do so.

The affidavits show that in a shopping survey of twenty-five retail record stores in New York and The Bronx thirteen of these twenty-five stores carried defendants' albums and

in 70% of the cases the sales clerk stated that the recording was made by the Metropolitan Opera Orchestra. It is obvious that this confusion will occur and that such confusion is the inevitable result. The defendants' use of the name " Metropolitan ", whatever their motive may be, results in obtaining substantial benefits which the confusion in names will bring about. Though the facts prima facie show confusion, it is not essential in this connection to prove actual confusion, deception or bad faith when the use of the name is calculated to deceive or to mislead unwary purchasers.

I had occasion to review this subject in *Golenpaul* v. *Lowenstein & Sons, Inc.* (N. Y. L. J., June 25, 1940, p. 2868, col. 2). I said there: " 2. Actual competition is not necessary as a basis of injunctive relief to prevent the commercial use of a trade mark or trade name previously adopted and exploited by another. The emphasis in the later cases is laid on the unfairness of the use rather than on the element of competition. The subsequent use, although innocent, will be enjoined even in connection with a non-competing product, where it forestalls the normal potential expansion of the first user's business, or, under certain conditions, whereby a reputation of the first user may be tarnished by the use of his mark upon an inferior product, or where a false impression may be created of a trade connection between the parties." (Citing *Philadelphia Storage Battery Co.* v. *Mindlin*, 163 Misc. 52; *Tiffany & Co.* v. *Tiffany Productions, Inc.*, 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482. See, also, *Yale Electric Corporation* v. *Robertson*, 21 F. 2d 467.)

Motion granted. Settle order which shall make provision for the bond to be furnished and for an early trial, if the parties so desire.