Cooke, J. (dissenting).
I dissent, voting for a reversal of the Appellate Division order and reinstatement of the judgment of Trial Term granting an injunction in favor of plaintiff.
The majority’s analysis of section 368-d of the General Business Law, it is respectfully submitted, imposes a narrow, overly technical gloss on its terms and, in effect, dilutes the "anti-dilution” statute. For the reason that future litigants may suffer from this interpretation, a broader view is needed and, in my opinion, was intended.
In interpreting this legislation, the court should not overemphasize the importance of a memorandum in support of this statute (see NY Legis Ann, 1954, pp 49-51). That writing describes the author’s view of the purpose of the proposed legislation and enumerates various problems in the area of dilution of a trade name or trade-mark. Dilution of a trade name through sales of dissimilar products is illustrated by somewhat fanciful examples such as "Buick aspirin tablets”, "Schlitz varnish”, "Kodak pianos”, and "Bulova gowns” (p 49). Indeed, that dilution can occur even in the case of dissimilar products, as the memorandum notes (p 50), has long been recognized by our common law which granted the right to enjoin the use of another’s name even in the absence of competition (see, e.g., Tiffany & Co. v Tiffany Prods., 147 Misc 679, 681, affd 237 App Div 801, affd 262 NY 482). Nevertheless, if the statute was intended to "codify the State common law concerning dilution” (NY Legis Ann, 1954, p 49; see, also, *547 3 NY Law Forum, 313, 316), there is no basis for restricting its application in the manner suggested by the majority.
Dilution does not occur only in the case of a name that is widely known. To be sure, the name Tiffany would be diluted if many noncompeting businesses used that name. However, a less well-known name can also be diluted, perhaps in a more harmful and direct manner. And dilution can occur in instances where there is competition, though in that instance a more appropriate remedy will ordinarily be found under general principles of unfair competition. The difficult case is where a specialized business, with a generic name used in other unrelated businesses, is used by a relatively small segment of the public who rely on its name. The problem occurs when that business is confronted with a newer company, bearing the same or a similar name, engaging in a field that, while perhaps noncompeting, is so closely related to that of the more established business that its customers will identify its name with the newcomer. This is such a case.
It is asserted that the legislative intent was to remedy "not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name” (p 544). It is then concluded that Allied is not sufficiently distinctive but rather is "a weak trade name” (p 545). But the terms of the statute do not require this interpretation and the protection it affords should be available to plaintiff based on the facts of this case.
While the trial court determined that plaintiff and defendant are actual and potential competitors, the Appellate Division majority found that the parties are not competitors in their own peculiar specialties nor are they likely to be. Whichever view of the facts one takes, however, it is apparent that the businesses are closely related. There is no basis in the statutory language for concluding that the enactment was not intended to provide a remedy for confusion caused by similar (though perhaps not actually competing) services such as these. The statute provides a remedy "notwithstanding the absence of competition” but does not mandate that in order to benefit from its provisions there must be no competition or dissimilar services, as urged to the contrary. Therefore, if plaintiff’s name is of a distinctive quality, it is entitled to a remedy under the anti-dilution statute.
It is wrong to conclude that the name Allied Maintenance is *548 not "an inherently strong trade name susceptible to dilution” (p 545). Of course its name is not as unique as other names held capable of dilution, but it is, to a limited audience, as distinctive as many others. The word Allied is a generic term but, as the trial court determined, that name has long been associated by the public, including customers and competitors in the building cleaning and maintenance industry, with plaintiff and its subsidiaries. Even a generic or descriptive name may acquire a secondary meaning in a given circumstance (see Columbia Broadcasting System v Columbia of N. Y., 97 NYS2d 455, affd 277 App Div 856; Metropolitan Opera Assn. v Pilot Radio Corp., 189 Misc 505, 508 [Shientag, J.]). That plaintiff’s name is not distinctive enough to allow it to prevent its use by others in noncompeting industries should not be a ground for allowing one in a closely related business to dilute the distinctive quality of its name in its field.
The majority opinion may be read as limiting the statute in question to the protection of only the most well-known names, such as Tiffany, of which there are few, from dilution by noncompeting products or services. The common law of the State has not so narrowed the protection afforded to less unique names and the fact that the statute operates even in the absence of competition does not, as noted, mean that it should have no effect where there is potential, if not actual, competition. A good illustration of this point is Long’s Hat Stores Corp. v Long’s Clothes (224 App Div 497). There, the plaintiff conducted a business of selling retail hats and haberdashery and, although it had discontinued its sales of clothing, it declared an intention to resume that branch of its business. The plaintiff there had developed a trade name and had a number of retail stores to which customers were attracted by the name "Long’s”. Some 22 years later, an individual engaged in the retail clothing business incorporated a business which maintained a retail clothing shop called "Long’s Clothing”. In granting an injunction to protect plaintiff’s name, the Appellate Division reasoned (p 498): "In this case the plaintiff is damaged because the articles sold by the defendant are so closely related to those presently sold by the plaintiff and so identical with those which the plaintiff has sold and intends to sell in the future, that there is direct appropriation of the plaintiff’s good will. In the enjoyment of its trade name the plaintiff is to be protected not only with respect to the merchandise it presently sells, but also with respect to that which *549 the public would believe, through the deception practiced by the defendant, that the plaintiff was selling. When a trade mark has been used by the owner and by another on goods of the same class, 'though different in species, the question whether they are so closely related—so near akin—as to be regarded as having the "same descriptive properties’ arises.” ’ (Rosenberg Bros. & Co. v. Elliott, 7 F. [2d] 962, 964.)”
The circumstances here are closely analogous. The name Allied, like the name Long’s, is not so unique that all would know its business, but it is known to a segment of the public that makes use of the service of cleaning and maintenance of buildings. After plaintiff was in business for many years, defendant entered into a related area and, depending upon whether one accepts the view of the Appellate Division majority or the trial court, may provide in some instances the same services. The use of a name associated with a particular business by one in a closely related field is a dilution of a less well-known name and is of no less significance to the particular plaintiff than use of an extremely well-known trade name by a totally unrelated business. This is the rationale underlying the holding in Long’s (supra), a case that has been regarded as a forerunner of the anti-dilution theory (see NY Legis Ann, 1954, p 50; Tiffany & Co. v Tiffany Prods., 147 Misc, at p 681, supra). Section 368-d of the General Business Law was intended to codify cases such as Long’s and that is why the statute should be applicable here.
Plaintiff should be granted the relief it seeks because, as a result of the similarity of names, those using defendant’s services may well be confused as to the source. But the cause of action would not necessarily fail even if the two could be distinguished. Under the statute recovery is allowed even in "the absence of confusion” and, despite any suggestion to the contrary, this State’s appellate courts have not expressed acceptance of any reading into the statute of a requirement of some showing of confusion (see Cue Pub. Co. v Colgate-Palmolive Co., 23 AD2d 829, affg on more limited grounds 45 Misc 2d 161 [cited by majority, p 544]).
To conclude, prior to enactment of the statute in question, in cases of this sort it was not determinative that a generic or descriptive name was so commonly used that the plaintiff could not prevent its use by unrelated businesses. For example, an injunction was granted against another business’ use of the name Columbia, a word that, like Allied, is commonly *550 found in the title of many businesses (see, e.g., Columbia Broadcasting System v Columbia of N. Y., 277 App Div 856, supra; see, also, Metropolitan Opera Assn. v Pilot Radio Corp., 189 Misc 505, supra). Moreover, the prestatutory cases recognized that a trade name should be protected from businesses that offer similar products or services (see Long’s Hat Stores Corp. v Long’s Clothes, 224 App Div 497, supra), and that is the situation faced by plaintiff in this matter. Section 368-d of the General Business Law was intended to make clear the broad reach of our State’s case law, which protected trade names even in the absence of competition, but, as noted in the memorandum relied on by the majority as indicative of the legislative intent, the statute is "essentially * * * a codification of common law” (NY Legis Ann, 1954, p 50). Therefore, interpreting the statute in light of the State’s common law, it is submitted that under the circumstances of this case plaintiff is entitled to the relief it seeks. Accordingly, for the reasons stated, the order of the Appellate Division should be reversed.
Judges Gabrielli, Jones and Fuchsberg concur with Judge Jasen; Judge Cooke dissents and votes to reverse in a separate opinion in which Chief Judge Breitel and Judge Wachtler concur.
Order affirmed, with costs.