**FLOW CONTROL INDUSTRIES, INC., Plaintiff,**

v.

**AMHI, INC., et al., Defendants.**

**No. C02–1101L–RSL.**

United States District Court, W.D. Washington, At Seattle.

March 12, 2003.

Philip Edgerton Cutler, Cutler Nylander & Hayton, Thomas W. Hayton, Cutler Nylander & Hayton, Robert G. Nylander, Jr., Cutler Nylander & Hayton, Seattle, WA, Robert O. Sailer, Judd & Sailer, Redmond, WA, for Defendants.

Peter S. Lewicki, The Johnson Law Group, Michael Patrick McGinn, Stokes Lawrence, Leslie C. Ruiter, Stokes Lawrence, Seattle, WA, for Plaintiff.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LASNIK, District Judge.

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment of Liability on Claims I—VI, Statutory Damages on Claim II, and Entry of Permanent Injunction." Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy*, 68 F.3d at 1221.

Taken in the light most favorable to defendants, the record shows that, in the spring of 2000, defendants discovered that plaintiff had included the terms "amflo" and "amflow" in the unseen code of its website. These terms, called "metatags," enable search engines, such as "google" or "metacrawler," to quickly review the content of a site and determine whether it is responsive to a user's request for information. By tagging its website with the name of its competitor's line of products, plaintiff ensured that anyone using a search engine to search for an AMFLOW chemical injection valve would be presented with plaintiff's website as an option.

Upon learning of plaintiff's dubious use of defendants' trademark, defendants Hilton and Ames, acting on behalf of the corporate defendant AMHI, Inc., responded by inserting the words "skoflo" and "skoflow" into the HTML code for A & H Enterprises' website. In addition, defendant Ames, with the full knowledge of defendant Hilton and on behalf of defendant AMHI, Inc., reserved the domain name *skoflo.com* and linked it to the A &

H website in such a way that when a potential customer typed in the internet address *www.skoflo.com*, they were automatically taken to *www.amflow.com*. Defendants' intent in registering the domain name *skoflo.com* was "to get Mr. Skoglund's attention to get him to cease his metatagging." Decl. of Thomas Hilton (filed 1/27/03) at ¶ 25. *See also* Decl. of Margaret Ames (filed 1/27/03) at ¶ 8.

Through the use of the *skoflo.com* domain name and the related metatags, defendants were able to bring their products to the attention of internet users who were attempting to search for plaintiff's products. Between July 2000 and December 2001 there were, according to plaintiff's tabulation, over 100 instances in which a search engine user typed in the keyword "skoflo" and ended up at A & H's website. Decl. of Bradford J. Axel (filed 1/7/03), Ex. 32. There were another eight instances, excluding the five hits generated by plaintiff's counsel, where an internet user attempted to reach *www.skoflo.com* and was automatically redirected to defendants' site. Opposition at 4–5.

When plaintiff discovered that defendants were using its trademark SKOFLO as a domain name and as a metatag, it demanded that defendants cease and desist from all such unauthorized use of SKOFLO on or in combination with its website. Decl. of Robert Sailer (filed 1/27/03), Ex. 1 at 2 (February 1, 2002, letter from plaintiff's counsel). In response, defendants noted "what appears to be an unauthorized and therefore infringing use of our client's U.S. Trademark 'Amflow®'" and requested an explanation. Decl. of Robert Sailer (filed 1/27/03), Ex. 2 (February 5, 2002, letter from defense counsel). On March 19, 2002, plaintiff's counsel forwarded a proposed agreement designed to settle the intellectual property disputes between the parties. Decl. of Robert Sailer (filed 1/27/03), Ex. 3. De-

fense counsel responded with a counterproposal: both sides would remove the offending metatags from their site and defendant Ames would unlink the *skoflo.com* domain name from A & H's website. Counsel made the point, however, that defendant Ames' ownership of the domain name *skoflo.com* was unrelated to the metatag issues, that she had "every legal right" to such ownership, and that, if plaintiff wanted to control the use of that domain name, it should "tender an offer to purchase the duly registered domain name now owned by Margaret Ames for a commercially reasonable sum." Decl. of Robert Sailer (filed 1/27/03), Ex. 4 (April 2, 2002, letter from defense counsel). This litigation was initiated the following month. Attorney Sailer has testified that, although he cannot recall exactly why he demanded a "commercially reasonable sum" in exchange for the *skoflo.com* domain name, he believes he was attempting to recover the out-of-pocket expenses defendant Ames had paid to register the domain name. Decl. of Robert Sailer (filed 1/27/03) at ¶ 11.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

(1) Defendants argue that the April 2, 2002, letter in which their attorney solicits an offer to purchase the *skoflo.com* domain name is inadmissible under Fed. R. Ev. 408. That rule makes evidence of "conduct or statements made in compromise negotiations" inadmissible for the purpose of proving liability for a claim or its amount. At this point in the litigation, the Court need not determine whether plaintiffs are entitled to offer counsel's letter to prove an element of its claim (*i.e.*, that defendants had a bad faith intent to profit from plaintiff's mark) rather than to imply that defendants acknowledged wrongdoing by offering to settle the dispute. There is

an issue of fact regarding counsel's intent in demanding a "commercially reasonable sum." If the evidence is taken in the light most favorable to defendants, as it must be in the context of this motion, a demand for reimbursement of costs as part of the settlement negotiations does not necessarily give rise to an inference of bad faith.

(2) Defendants object to Exhibits 26 and 27 to the Decl. of Bradford J. Axel on hearsay grounds. Plaintiff argues that the statements therein are not being offered for the truth of the matter asserted (such as the fact that *www.skoflo.com* resolved automatically to A & H's website), but rather to show "when and how FCI first learned of Defendants' wrongful conduct." Reply at 11. None of the issues presented in this motion turns on the date plaintiff discovered that defendants were using plaintiff's trademark. Exhibits 26 and 27 are therefore irrelevant and have not been considered.

■ (3) Defendants object to Exhibit 28 to the Decl. of Bradford J. Axel as double hearsay. Plaintiff argues that the statement reported by the author of the e-mail (that SKOFLO valves are now called AMFLOW valves) is not being offered to show "that the declarant actually made the statement," but rather to show "that the underlying declarant was confused." Of course, the supplier's confusion can be inferred only if one assumes that he made the statement attributed to him. The author's request for confirmation that SKOFLO valves had been renamed AMFLOW valves is also hearsay. The Court cannot, based on this out-of-court statement, assume that Silalahi was actually confused: he may have known the supplier's report was false but simply wanted to hear it from the horse's mouth. It would be improper to assume confusion without allowing defendants an opportunity to cross-examine the declarant. Finally, there is no indication that either the supplier's or Silalahi's alleged confusion was the result of defendants' use of plaintiff's trademark. The unidentified supplier could have heard a rumor at a conference or been told that there had been a merger. Exhibit 28 constitutes hearsay, is not relevant, and has not been considered.

■ (4) Defendants object to portions of the deposition of Karen Court and a related e-mail. Decl. of Bradford J. Axel (filed 1/7/03), Exs. 3 and 29. Court is available to testify regarding her statements in the e-mail and to recount her conversation with the underlying declarant, Julian Migliavacca. As for the truth of Migliavacca's statements, the Court finds that contemporaneous complaints from potential customers or suppliers who attempted to find SKOFLO products but unintentionally ended up at A & H's website are admissible to show the truth of the matters asserted under the residual hearsay exception set forth in Fed. R. Ev. 807. First, the fact that individuals were confused and/or that they did not understand the relationship between defendants and plaintiff's products is material to this case. Second, reasonable efforts would not produce evidence that is more probative than these contemporaneous communications. As was the case in *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 608–09 (9th Cir.1993), bringing each complainant into court to testify, under oath, that their statements were true would be an unreasonable exercise and would not necessarily result in testimony that is any more trustworthy than the complaints themselves. Third, admitting the communications will make relevant evidence available for consideration and provides an efficient means by which plaintiff can show confusion among far-flung consumers. Fourth, defendants have had a fair opportunity to review plaintiff's evidence and to prepare to meet it. Finally, the communications have cir-

cumstantial guarantees of trustworthiness that are equivalent to the enumerated hearsay exceptions: the comments were made independently from unrelated consumers, the underlying declarants report roughly similar experiences, and they had no identifiable motive to lie. In short, there is no reason to believe that contemporaneous recordings of customer complaints are "the product of faulty perception, memory or meaning, the dangers against which the hearsay rule seeks to guard." *Figgie Int'l,* 994 F.2d at 608.

(5) The Court's copy of Exhibit 36 to the Decl. of Bradford J. Axel does not contain document # A00844. Defendants' objection to that document number has not been considered.

(6) The June 28, 2001, e-mail from Hariz Leong to defendant Hilton, attached as document # A00960 to Exhibit 37 to the Decl. of Bradford J. Axel, is not relevant to any of the issues raised by plaintiff's motion. There is no indication that plaintiff's alleged failure to respond to an e-mail from a potential customer was in any way related to defendants' use of plaintiff's trademark.

(7) Defendants' objections to ¶¶ 13–16 of the Decl. of Paul Skoglund and ¶ 9 of the Decl. of Frederick J. Gordon are sustained at this point. Whether Skoglund and Gordon have a proper foundation for their general statements is not clear. The specific statements recounted by Skoglund ¶ 16 constitute triple hearsay and have none of the circumstantial guarantees of trustworthiness discussed above.

(8) Many of plaintiff's allegations regarding prior "bad acts" are not supported by admissible evidence, are not necessarily wrongful, and/or have little relevance to plaintiff's trademark infringement claims. The Court declines to rule on the admissibility of this evidence in the context of this motion, but finds the smattering of accusations dating back over ten years to be unpersuasive on any of the issues currently before the Court.

(9) In order to make out a claim of false designation under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), plaintiff must show that it owns the rights in the mark at issue and that defendants' use of the mark is likely to cause confusion. Defendants argue that the Court should not exercise its equitable powers to protect plaintiff's mark because plaintiff has unclean hands and has abandoned its rights in SKOFLO. Defendant also argues that plaintiff has failed to establish customer confusion as a matter of law.

■ Defendants' first argument is without merit. The doctrine of unclean hands would preclude enforcement of a trademark only if plaintiff's wrongdoing related to the getting or using of the trademark rights that plaintiff was attempting to enforce. *See Japan Telecom, Inc. v. Japan Telecom America, Inc.,* 287 F.3d 866, 870 (9th Cir.2002); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:51 (4th ed.2002). The fact that plaintiff may have infringed defendants' AMFLOW trademark has nothing to do with the manner in which plaintiff obtained or used its SKOFLO mark. The remedy for plaintiff's alleged infringement is, of course, a counterclaim such as that asserted by defendants in this case. Because plaintiff's alleged wrongdoing is unrelated to the right it seeks to enforce in this litigation, the doctrine of unclean hands does not apply.

■ Defendants' argument that plaintiff abandoned its trademark by granting a "naked license" is also unpersuasive. For purposes of this analysis, the Court assumes that plaintiff authorized defendants Ames and/or Hilton to register the SKOFLO trademark in certain foreign jurisdic-

tions. Such authorizations are not, however, a "naked license." Defendants were not authorized to place plaintiff's mark on products over which plaintiff failed to maintain sufficient quality control. At most, defendants were entitled to use the SKOFLO mark in their attempts to sell products manufactured by plaintiff. The "naked license" cases cited by defendants are inapplicable.

■ Having disposed of defendants' argument regarding plaintiff's ownership of the SKOFLO mark, the Court must determine whether, as a matter of law, defendants' use of the mark was likely to cause confusion in the mind of an appreciable number of consumers. *McCarthy on Trademarks and Unfair Competition*, § 23:91. Defendants argue that likelihood of confusion involves a fact-intensive inquiry which should be left to the jury. All of the facts relevant to the likelihood of confusion determination in this case are undisputed, however. Having considered the factors identified in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), the Court finds that summary judgment in favor of plaintiff is warranted because (1) defendants used a mark identical to plaintiff's; (2) the mark is distinctive and indicates the source of plaintiff's products; (3) defendant used plaintiff's mark to sell a competing line of chemical injection valves; (4) there is evidence of actual confusion of the type discussed in *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057 (9th Cir.1999); (5) defendants intentionally used plaintiff's mark to generate interest in their own product (if not affirmatively mislead potential customers as to the origin of their product);[1] and (6) both companies used the world wide web and suppliers to market their products.

Defendants' main argument is that plaintiff has not shown that "an appreciable number" of consumers were confused. Defendants argue that, because purchasers of chemical injection valves are a small, knowledgeable group with considerable investments at stake, they would not be easily confused by defendants' metatagging and/or the link between *www.skoflo.com* and defendants' website. There is, however, evidence of actual consumer confusion, even among this knowledgeable customer base. *See* Decl. of Bradford J. Axel (filed 1/7/03), Exs. 3 and 29. In addition, the Ninth Circuit has already determined that "many forms of consumer confusion are likely to result" from defendants' use of its competitor's trademark as a domain name, and that metatagging a website with a competitor's mark creates "initial interest confusion" in violation of the Lanham Act. *Brookfield Communications*, 174 F.3d at 1057, 1065.

Defendants points out that there is little evidence of actual confusion and that only five unique users, not including plaintiff's counsel, were transferred to A & H's website after typing in *www.skoflo.com*. As discussed in *Brookfield Communications*, confusion arising from the unauthorized link, the virtual identity of the marks, the relatedness of the products, and the similarities in marketing techniques can take many forms and is very likely in the circumstances presented here:

> People surfing the Web for information on [SKOFLO] may confuse [SKOFLO] with the [website at *skoflo.com*] and simply assume that they have reached [plaintiff's] web site. In the Internet context, in particular, entering a web site takes little effort—usually one click from a linked site or a search engine's

---

1. Defendants' "intent" is discussed more fully *infra* at ¶ 10 in the context of plaintiff's cybersquatting claim.

list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership. Alternatively, they may incorrectly believe that [defendant] licensed [*skoflo.com*] from [plaintiff], or that [plaintiff] otherwise sponsored [defendants'] database. Other consumers may simply believe that [defendants] bought out [plaintiff] or that they are related companies.

Yet other forms of confusion are likely to ensue. Consumers may wrongly assume that the [SKOFLO] database they were searching for is no longer offered, having been replaced by [defendants'] database, and thus simply use the services at [defendants'] web site. And even where people realize, immediately upon accessing [*skoflo.com*] that they have reached a site operated by [defendants] and wholly unrelated to [plaintiff], [defendants] will still have gained a customer by appropriating the goodwill that [plaintiff] has developed in its [SKOFLO] mark. A consumer who was originally looking for [plaintiff's] products or services may be perfectly content with [defendants'] database (especially as it is offered free of charge); but he reached [defendants'] site because of its use of [plaintiff's] mark as its second-level domain name, which is a misappropriation of [plaintiff's] goodwill by [defendants].

174 F.3d at 1057 (citations omitted). The undisputed facts of this litigation show that, despite the admittedly scant evidence of actual confusion, plaintiff has established a likelihood of confusion. Defendants argue that any resulting confusion was *de minimis* and should not be the basis for liability under § 43(a) of the Lanham Act. Defendants do not dispute, however, that the customer base for their products is quite small, such that one or two customers lost or gained per year

would make a real difference to the parties. In short, defendants used plaintiff's mark in such a way as to divert people looking for SKOFLO products to the A & H website, thereby improperly benefitting from the goodwill that plaintiff developed in its mark. *Brookfield Communications,* 174 F.3d at 1062. Such conduct is a violation of § 43(a) of the Lanham Act.

■■■ (10) In order to make out a claim under the Anti–Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), plaintiff must establish that its mark is distinctive, that defendants used a mark that is identical or confusingly similar to plaintiff's, and that defendant had a bad faith intent to profit from the mark. Defendants do not contest the first two elements, but assert that there are credibility issues which preclude a finding that they had a bad faith intent to profit from the registration of plaintiff's mark as a domain name.

In the context of this motion for summary judgment, the Court accepts as true defendants' claim that they registered the domain name *skoflo.com* for the sole purpose of forcing plaintiff to remove the "amflow" metatags from plaintiff's website. This admission does not help defendants, however. It simply shows that they intended to use the domain name to obtain a benefit from plaintiff. Defendants do not, and cannot, argue that they possessed an intellectual property interest in the name aside from the domain name registration itself, nor have they put forward any good faith need for the name or asserted that their choice of domain names was an unfortunate coincidence. Defendants, with full knowledge of plaintiff's use and association with the SKOFLO mark, intentionally registered the *skoflo.com* domain name for the purpose of improving their bargaining position in a commercial dispute. In addition, defendants did not simply regis-

tered *skoflo.com,* but used the domain name to attract potential customers to their website. Defendants do not even attempt to argue that there was a good faith justification for that particular use of plaintiff's mark. Bad faith is therefore established. The undisputed facts establish that defendants violated § 43(d) of the Lanham Act.

■ (11) Plaintiff has elected to recover an award of statutory damages, rather than actual damages, for the above-described violations of the ACPA. Statutory damages may be awarded in the amount of "not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Because an award of statutory damages requires the Court to balance the equities of the situation in determining the amount, the Court declines to resolve this issue until the validity of defendants' counterclaim of infringement is determined. The Court recognizes that defendants' registration and use of plaintiff's mark as a domain name are clearly acts of a different nature than the metatag battle that forms the basis of defendants' counterclaim. Nevertheless, whether plaintiff infringed should be determined before the Court applies the principles of equity to craft a suitable remedy.

(12) Plaintiff's last claim is for unfair competition and misappropriation under the common law. The parties have made little effort to separately address the elements of this claim. Having reviewed relevant Washington case law, it appears that many unfair competition claims go to the jury for a determination of whether what defendant did, in the overall context of the case, was "unfair." Count V of plaintiff's complaint is based on defendants' proven trademark violations plus their alleged acceptance of orders for SKOFLO products, misrepresentations regarding the level of Hilton's expertise and his role in designing plaintiff's valves, and defendants' registration of SKOFLO in three foreign countries. With the exception of the trademark violations, the other allegations are contested and cannot form the basis for summary judgment. In addition, the relevant case law suggests that certain aspects of the state unfair competition claim have been subsumed by the Consumer Protection Act, the Trade Secrets Act, and/or other legislative enactments. Although not addressed by the parties, there is an argument that, to the extent plaintiff's claim turns on trademark allegations, it has been superceded by the state trademark imitation act (RCW 19.77.140). At the very least, there are issues of fact regarding the non-trademark aspects of defendants' alleged unfair practices that must be decided before the "unfairness" of defendants' conduct can be assessed. Plaintiff's are not entitled to summary judgment on this claim.

■ (13) Plaintiff is entitled to a permanent injunction enjoining defendants from using the domain name *skoflo.com* or placing infringing metatags on their website. Defendants' belated decision to remove the metatags and transfer the domain name to plaintiff after this litigation was filed does not obviate the need for injunctive relief. *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir.1986). Because plaintiff has not established that defendants engaged in unfair competition under state law, injunctive relief related to that claim is not appropriate. Plaintiff has also failed to establish any right, in law or in equity, to have a "conspicuous notice" placed on A & H's homepage as requested in its motion.

For all of the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part. Plaintiff is entitled to summary judgment against defendants AMHI, Inc.,

Margaret Ames, and Thomas Hilton on its federal trademark infringement and cybersquatting claims. Issues of fact preclude judgment as a matter of law on plaintiff's common law unfair competition claim, however. The Court will determine the appropriate amount of statutory damages under 15 U.S.C. § 1117(d) after the viability of defendants' counterclaim for infringement is determined.

Defendants AMHI, Inc., Margaret Ames, and Thomas Hilton are hereby permanently enjoined from individually or through one or more of their officers, agents, or employees:

(a) using plaintiff's protected marks, including SKOFLO and SKOFLOW in commerce;

(b) registering plaintiff's protected marks as a domain name; and

(c) placing plaintiff's protected marks in the HTML code of any website.