**INFORMATION SUPERHIGHWAY, INC., Plaintiff,**

v.

**TALK AMERICA, INC. and America Online, Inc., Defendants.**

**No. 03 Civ.1995(RWS).**

United States District Court,
S.D. New York.

Oct. 13, 2005.

Daniel A. Eigerman, New York, NY, for Plaintiff.

Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, New York, NY by Larry B. Miller, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Talk America, Inc. ("Talk") and America Online, Inc. ("AOL") (collectively the "Defendants") have moved under Rule 56, Fed.R.Civ.P., to dismiss the amended complaint of plaintiff Information Superhighway, Inc. ("ISI") alleging trademark infringement and state law claims arising out of the use by the Defendants of the domain name "Telsave.com." For the reasons set forth below, the motion is granted, and the amended complaint is dismissed.

The confused history of Telsave.com and its use by the Defendants have given rise to this litigation. The failure of ISI to establish injury and the elements of a trademark infringement has resulted in the outcome described below.

### Prior Proceedings

This action was initiated by ISI on March 21, 2003. The amended complaint was filed on May 16, 2003, alleging eight causes of action: (1) violation of the Lanham Act, 15 U.S.C. § 1125, for use of "the domain name and trade name 'Telsave.com'", (2) violation of the New York General Business Law § 360–*l*, (3) injunctive relief, (4) unfair competition, (5) unjust enrichment, (6) accounting for profits, (7)

tortious interference with business relations, and (8) conspiracy.

The Defendants moved to dismiss the complaint on the basis of the release between the parties dated April 6, 2000. By opinion of July 30, 2003 (the "July 30 Opinion"), that motion was denied based on the Court's conclusion that "the terms of the April 6, 2000 release [were] ambiguous and because ISI ha[d] not clearly acquiesced in the use of its Telsave trademark and domain name...." *See Info. Superhighway, Inc. v. Talk America, Inc.,* 274 F.Supp.2d 466, 472 (S.D.N.Y.2003). The July 30 Opinion established that ISI's claim is based upon the Defendants' actions after April 7, 2000.

Discovery has proceeded, and the instant motion was heard and marked fully submitted on March 23, 2005.

### The Facts

The facts are derived from the Defendants' Rule 56.1 Statement and the Plaintiff's Responsive Statement and are not in dispute except as noted below.

Talk America, Inc. (formerly, Talk.com Holding Corp.) ("Talk") was incorporated in Pennsylvania in 1989 under the name Tel–Save, Inc. From 1989 to 1997, its main business was providing long distance telephone service.

Talk America Holdings, Inc. (formerly, Talk.com, Inc.) ("TAH") was incorporated in Delaware in 1995 as Tel–Save Holdings, Inc.

ISI was incorporated in 1994 in New York. Its president is Ira Todd Klein ("Klein").

AOL is the nation's largest Internet service provider with over 30,000,000 subscribers.

In or about January 1997, AOL, TAH, and Talk negotiated a marketing agreement (the "Agreement"), which provided that Talk would be the exclusive provider of telecommunication services offered by AOL to AOL subscribers in areas of long distance, wireless, and local services. The Agreement was executed on or about February 22, 1997. On February 25, 1997, TAH announced publicly that it had entered into the Agreement with AOL. Under this agreement, Tel–Save, Inc. (Talk) would be the exclusive provider of long distance telecommunications services to be marketed by AOL to all of the subscribers to AOL's online network under a distinctive brand name, AOL Long Distance, to be used exclusively for Tel–Save Inc.'s services. At the signing of the contract, Talk paid AOL $100,000,000.

According to the Defendants, on or about February 12, 1997, ISI registered the domain name infosuperhighway.com. According to ISI, the registration was made by Network Solutions in August 2005.

On or about March 11, 1997, shortly after the announcement of the Agreement, ISI registered the domain name tele-save. com. On or about March 14, 1997, ISI registered the following domain names: tele-save.net, telsave.net, telsave.com, telsave.net. According to ISI, the registrations were made at the recommendation of the president of Network Solutions Gabriel Batista ("Batista") who subsequently became president and CEO of Talk.

Klein, in a letter to Tel–Save.com, Inc. dated April 22, 1999, rehearsing the dispute between the parties, stated that the domain names (tele-save.net, telsave.net, telsave.com, telsave.net) "were all generic."

ISI has registered domain names incorporating marks registered to other parties with the United States Patent and Trademark Office ("USPTO") or marks similar to those owned by other parties, including: AOL-longdistance. com, AOLld.com, AOL–

Id.com, MCIsprintcom.com, Yahoolongdistance. com, Flowers-r-us.com, Computers-r-us.com, 1800telsave.com, 1888telsave. com, AOLld.com, AOL-ld. com, MCIsprintcom.com, and Beds-r-us.com. ISI used Telsave.com for seven years in its business of reselling telephone usage.

Talk has also registered domain names without submitting evidence as to their use. It has also filed state trademarks and doing-business certificates with no further action.

In 2000, ISI and Talk's parent settled previously pending litigation, which gave rise to the release described in the July 30 Opinion. Pursuant to an amendment to the Agreement dated September 19, 2001, terminating the Agreement between AOL and TAH, when the keywords "telsave" or "telsave.com" were entered as keywords in the AOL browser, a user would be directed to the Talk website and not to ISI's website. Pursuant to the amendment, the aforementioned keywords were to expire on February 28, 2003. Prior to the termination of the Agreement, counsel to ISI forwarded litigation papers to the Defendants.

From August to November 2002, AOL recorded 42 hits for the keyword telsave and 6 hits for the keyword telsave.com. During the period from December 2002 to the end of February 2003, according to counsel for the Defendants, there were 36 hits for telsave and 122 hits for telsave.com. The AOL record for key words because of its size was created on a rolling 13 month basis so that material earlier in time than 13 months from the date of any inquiry was deleted as a matter of corporate practice.

In 2003 Talk had over 557,000 billed bundled lines and approximately 251,000 billed stand-alone long distance subscribers. Over 90% of Talk's local and long distance lines were for residential customers.

From at least March 10, 2003, and continuing to the present, "telsave" and "telsave.com" are no longer AOL keywords. On January 4, 2004, use of telsave on AOL browser produced a matching search page which led to the ISI website.

Talk has no present intention of using the keywords telsave and/or telsave.com to link to Talk's website. According to ISI, Talk remains a competitor.

In or about December 2002, Klein, who is a subscriber to AOL, discovered that typing the above telsave keywords took him to Talk's website arrangement.

ISI has between 50 and 60 customer companies which purchase telephone service for companies and employees. ISI operates out of a home office and has a separate office space for which it does not pay rent; no documents are stored in the office space. Its files are kept in boxes in closets, and it maintains no filing cabinets.

ISI is chiefly involved in selling long distance telephone services, but it contends that it competes directly with Talk as to certain employees of its corporate clients.

From 1993 to the date of his deposition, Klein was employed by ISI. ISI's other employee, who is Klein's wife, maintains the company's records.

ISI is not aware of any person who has entered telsave or telsave.com as an AOL keyword. It has conducted no studies regarding consumer perceptions or attitudes with respect to the word telsave or studies showing how many people, if any, associated ISI with telsave or telsave.com between January 1, 2002 and the present. ISI has presented no evidence, documentary or otherwise, as to the number of people who associate telsave or telsave.com with it between January 1, 2002 and the present.

ISI has no written or oral agreements with any web browser companies such as Yahoo with respect to the keywords telsave or telsave.com. It has not engaged in any print, television, or radio advertising, except for possibly an advertisement in Phone Plus, a trade magazine, sometime in 2000 and "some banner ads" on the internet in either 2000 or 2001; it has not produced copies of any of the aforementioned advertisements.

ISI has alleged that it has advertised in e-mail, flyers, and faxes at various times, but it has no records or documentation to support this allegation, other than one document, which does not contain or refer to either telsave or telsave.com. The only instance of unsolicited media coverage of ISI is an article from January 7, 1999, in which an online news service, thestreet.com, reported looking for Talk's website, Telsave.com, and mistakenly accessing ISI's telsave.com website. ISI has alleged without contradiction that Yahoo, Google, and Microsoft Network search engines contain its domain name, Telsave.com. No evidence has been submitted as to the results of this practice.

ISI's Telsave.com is a composite mark combining the dictionary abbreviation "Tel" meaning "telephone" and the word "save" meaning "to economize or to avoid waste or expense." The *www.telsave.com* website maintained by ISI states that its services save people money on "Local, long distance, conferencing, DSL, and other telecom services," promising "Lower Monthly Bills," "Dollars and $ense Savings," and urging visitors to "Become a TelSaver today!".

ISI has no evidence of consumer confusion between Talk and ISI and has not identified any customer who learned of its services through accessing its website at www.telsave.com. According to ISI, it also has sold Talk's services as a result of an ISI contract with Cognigen, and a Cognigen report indicates that customers had been referred to the Talk website by the Defendants' conduct.

ISI is aware of numerous companies who used Telsave in one form or another, but according to ISI these companies are not competitors.

No evidence has been submitted to show that the Defendants intended to deceive the public and to pass off their services as those of ISI, nor evidence of any ISI customer accessing Talk by an AOL keyword.

Talk has no knowledge of any ISI customer accessing Talk by an AOL keyword. ISI has no documentary evidence of any consumer who tried to reach ISI but was unable to do so because of the AOL key word arrangement with Talk.

ISI has no knowledge or information as to how many of its customers were Talk customers or customers of other carriers by way of Cognigen, other than the Cognigen report of commissions reflecting customers and the services they signed up for.

ISI has no information as to how many of its customers used Talk's telecommunication services either before or after 2003.

ISI has noted a drop in its gross revenues from $400,000 to $260,000 during the period in question. However, no evidence has been adduced to determine the cause of this diminution.

Thereafter ISI sought to sell its Telsave mark to Talk, but no terms were agreed upon. The docket and the July 30 Opinion establish that the parties resolved their differences up to and including the date of the release of April 6, 2000. The Defendants ceased using the keywords telsave and telsave.com by March 10, 2003.

### The Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate where plaintiff is unable to establish the existence of each and every element upon which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A non-moving party cannot overcome a motion for summary judgment with mere assertions, but instead must present "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). "A dispute is not 'genuine' unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

Summary judgment may be granted in trademark matters where there is no protectable trademark interest and no likelihood of confusion. *Nabisco, Inc. v. Warner–Lambert Company,* 220 F.3d 43 (2d Cir.2000) (citing *Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996)); *Cosmetically Sealed Industries, Inc. v. Chesebrough–Pond's USA Co.,* 125 F.3d 28 (2d Cir.1997); *see also Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 215 (2d Cir.1985) (noting § 43(a) of Lanham Act's goal of preventing consumer confusion regarding the source of goods or services produced).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and based on relevant admissible evidence. *See* Fed. R.Civ.P. 56. A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995) (citation omitted).

### The Lanham Act Claim Is Dismissed

■ To establish a claim for trademark infringement under Section 43(a) of the Lanham Act (the "Act"), 15 U.S.C. § 1125(a), a plaintiff must demonstrate that it has a valid trademark entitled to protection and that the defendant's use of it is likely to cause confusion of an appreciable number of ordinarily prudent purchasers as to the source of goods or services in question. *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993); *see also Time, Inc. v. Petersen Publ'g Co. L.L.C.,* 173 F.3d 113, 117 (2d Cir.1999) (noting that *Gruner* test is applicable to claims brought under § 1114(1) and § 1125(a)); *accord Virgin Enterprises Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir.2003).

■ The Act only protects marks that are inherently distinctive, arbitrary, suggestive, or that have acquired "secondary meaning." *See, e.g., Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976). The Federal Circuit recently rejected the notion that domain names are inherently distinctive: "The simple fact that domain names can only be owned by one entity does not of itself make them distinctive." *In Re Oppedahl & Larson, LLP,* 373 F.3d 1171, 1176–77 (Fed.Cir. 2004).

■ Telsave is not inherently distinctive, but rather simply is descriptive of the qualities, ingredients, or characteristics of the goods or services related to the mark, *i.e.,* that of saving money on telephone bills. *See Estate of P.D. Beckwith, Inc. v. Comm'r of Patents,* 252 U.S. 538, 543, 40 S.Ct. 414, 64 L.Ed. 705 (1920); *see also* Trademark Manual of Examining Procedure ("TMEP"), § 1209.03(m) (TLDs [such

as ".com" or ".net"] generally serve no source-indicating function, [and] their addition to an otherwise unregistrable mark typically cannot render it registrable). The combination of "telsave" and "com" in the URL telsave.com does not change the essentially descriptive character of tel-save.com. The use of telsave with the capital T in Tel and the capital S in Save/r indicates an understanding of the mark as the combination of the abbreviation "Tel" for telephone and "Save" for savings.

Indeed, the dictionary definitions of the parts of the composite TelSave mark indicate the public's understanding of the mark. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) (dictionary definitions, while not conclusive proof of mark's generic value, reflect the general public's perception of a mark's meaning and implication); *In re Oppedahl & Larson LLP*, 373 F.3d at 1176 (dictionary definitions show the relevant purchasing public's understanding of contested terms).

> tele or tel ... 1. distant: at a distance: over a distance (telegram) ... c: tele-communication (telemarketing).

Merriam–Webster's Collegiate Dictionary, Eleven Addition, p. 1284.

ISI has cited *West & Co. v. Arica Institute, Inc.*, 557 F.2d 338 (2d Cir.1977). There, the Second Circuit concluded that "psychocalisthenics" was an "odd and unusual term" and does not merely describe "'a combination of various yoga systems, dance and calisthenics' which require continual motion and are designed to produce specific mental, emotional and spiritual results." *Id.* at 342–43. The term was held to be suggestive because it requires imagination, thought, and perception to reach a conclusion as to the nature of the services. Here, the Telsave mark describes the purpose of ISI's services, saving customers money on telephone services. There is no

"odd" or "unusual" term, but only "tel" and "save," and the combination of the terms does not require imagination as to what ISI's services include.

In *McSpadden v. Caron*, 2004 WL 2108394 at *13 (W.D.N.Y.), cited by ISI (Opp. Mem. at 9), the court found "that the usamedicine.com trademark is merely descriptive, and not suggestive," reasoning as follows:

> Here, the mark "usamedicine.com" is used in connection with a website selling prescription drugs, or medicine, primarily to persons in the United States of America, also known as the U.S.A. In this context, it requires little imagination, thought, or perception to reach a conclusion regarding the nature of the goods being sold. In fact, it appears highly likely that in choosing the name usamedicine.com plaintiffs wanted consumers to be able to immediately conclude from the website's name that they could purchase medications on the website, and that the website was somehow associated with the United States.

*Id.*

Marks formed from combinations of well-known words or abbreviations have been found to be descriptive: THE SPORTS AUTHORITY (descriptive of a sporting goods store) (*The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 961 (2d Cir.1996)); TRAVEL CARE (for pressing irons) (*Remington Prods., Inc. v. North Am. Philips Corp.*, 892 F.2d 1576, 1580–82 (Fed.Cir.1990)); POWERCHECK (for a product which checks power in a battery) (*Ideal World Marketing, Inc. v. Duracell, Inc.*, 15 F.Supp.2d 239, 244 (E.D.N.Y.1998)); SNAKELIGHT (descriptive of a flashlight with a flexible neck) (*Black & Decker Corp. v. Dunsford*, 944 F.Supp. 220, 225 (S.D.N.Y.1996)); ARTHRITICARE (describes the general use (treatment for the

care of arthritics) to which the product or service is put) (*Bernard v. Commerce Drug Co.*, 774 F.Supp. 103, 107–08 (E.D.N.Y.1991)); SPORTSCREME (for topical heat analgesic (*Thompson Medical*, 753 F.2d at 216–17)); FAST TRACK (for athletic wear) (*Karmikel Corp. v. May Dept. Stores Co.*, 658 F.Supp. 1361, 1370 (S.D.N.Y.1987)); CLASSROOM (magazine directed at teachers and students) (*Scholastic, Inc. v. Macmillan, Inc.*, 650 F.Supp. 866, 871 (S.D.N.Y.1987)). Similarly, the combination of tel and save to form Telsave or Telsave.com used in connection with the offering of telecommunication services is merely descriptive of its services. *Accord Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir.1992), where the Second Circuit stated with respect to the PM mark:

> Given that context, the conclusion that "PM" describes rather than suggests a nighttime product was not clearly erroneous. Once the consumer arrives at an awareness that the product is useful at nighttime, the "purpose or utility" of the product has been conveyed, even though the consumer is not aware of why the product is useful at night.

*Bristol–Myers*, 973 F.2d at 1041.

Furthermore, there is no evidence in the record that Telsave has acquired secondary meaning. No evidence has been submitted with respect to any significant advertising expenditures promoting Telsave, consumer studies or expert witnesses linking Telsave to a single source, sales related to Telsave and telsave.com., or a lengthy and exclusive use of Telsave. *See id.*, 973 F.2d at 1041 (enumerating the above factors); *Thompson Medical*, 753 F.2d at 217 (same); *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 2004 WL 1406075, at *8, 2004 U.S. Dist. LEXIS 11468, at *21 (S.D.N.Y. June 23, 2004). In the absence of such evidence, ISI has not shown that Telsave has acquired secondary meaning.

■ Even if it is assumed that Telsave is suggestive, ISI must establish a likelihood of confusion in accordance with the eight factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). These factors include: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product, and (8) the sophistication of the buyers. *Id.*, 287 F.2d at 495. This "list of *Polaroid* factors is not exclusive and the analysis of the factors is 'not a mechanical process.'" *Merriam–Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 70 (2d Cir.1994), (quoting *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir.1993)) *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995).

### 1. *The Strength Of The Mark*

■ The strength of a trademark encompasses both the mark's inherent distinctiveness, or its arbitrariness in relation to the product for which it is used, and its "acquired distinctiveness," or "the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition." *Virgin Enterprises Ltd.*, 335 F.3d at 147.

No evidence has been presented that potential purchasers identify the words telsave and/or telsave.com with ISI rather than Talk, which has been using Tel–Save and variations thereof since 1989 in connection with its telecommunication services. The discussion of the descriptive nature of the mark, set forth above, indi-

cates the lack of distinction for the ISI mark. This factor weighs in favor of the Defendants.

### 2. The Degree Of Similarity Between The Two Marks

■ Here, the marks are identical and the goods are identical. Since Talk is the senior user of the mark, this factor weighs in its favor.

### 3. The Proximity Of The Products

When two products compete with each other, the likelihood increases that the use of similar marks will cause consumer confusion. *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 582 (2d Cir.1991). There is a dispute here as to whether the goods compete. According to Talk, it primarily provides telephone services to individuals, while ISI's "50 to 60 customers" are almost exclusively businesses. According to ISI, there is a possibility but not a quantification of competition arising out of services provided for the employees of its corporate clients. This factor is neutral in view of the lack of any quantification.

### 4. The Likelihood That The Prior Owner Will "Bridge The Gap"

This factor weighs in favor of Talk as ISI's marketing efforts and sales have been minimal.

### 5. Actual Confusion

There has been no evidence of any confusion between the products and services or that any of the entries of AOL keywords telsave and telsave.com were the result of confusion. It is equally possible that existing Talk customers, acquired through Talk's marketing agreement with AOL, continued to access their accounts by going to AOL's keyword telsave as it is that, as ISI contends, consumers were

seeking its website. The extent of any such confusion, however, is entirely speculative. Under these circumstances this factor favors the Defendants.

### 6. The Defendants' Good Faith In Adopting Its Mark

The sixth *Polaroid* factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 397 (2d Cir.1995) (citations and internal quotations omitted). The Second Circuit has stated that in determining a defendant's intent, "actual or constructive knowledge" of the prior user's mark or trade dress may indicate bad faith. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987).

Here, the Defendants publicly announced their agreement on February 25, 1997 that Talk (formerly Tel–Save Inc.) would be the exclusive long distance services provider for AOL subscribers, and that Talk had paid $100,000,000 to AOL for that privilege. Three weeks later, ISI registered a number of domain names, including variants of "Telsave." There is no basis on which to conclude that the Defendants intended to capitalize on ISI's mark. ISI's registration of the domain name telsave.com directly counters any supposition that Talk acted in bad faith.

■ Registration of multiple domain names known to be identical or confusingly similar to the marks raises an inference of bad faith. *International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco,* 192 F.Supp.2d 467, 487 (D.Va.2002). ISI's claim regarding the Defendants' last purported offer to purchase the telsave.com

domain name (Opp. Mem. at 11) does not indicate that Talk recognized ISI's rights to the domain name telsave.com. The offer, according to ISI, occurred in January 1999, ten months prior to passage of the Anticybersquatting Consumer Protection Act ("ACPA") on November 29, 1999. 1999 Acts, P.L. 106–113, § 3010, 113 Stat. 1536 (The bill was introduced on June 21, 1999: 1999 S. 1255, *see* 145 Cong. Rec. S 7325).

ISI has contended that "an unauthorized website link, like the one that brought on this lawsuit, evidenced likelihood of confusion in and of itself, without more" (Opp. Mem. at 12), relying upon *Flow Control Indus. v. AMHI Inc.*, 278 F.Supp.2d 1193 (W.D.Wash.2003). Here the challenge is to the use of a keyword in a proprietary search engine belonging to AOL, not a link from one website to another and not a URL. ISI has submitted no evidence to establish that if an AOL user typed the complete URL www.telsave.com with the intention of going to the ISI website, that user was "hijacked" to Talk's website and not ISI's.

Also, in *Flow Control* the undisputed evidence showed that the defendant deliberately registered the domain name skoflo.com, where SKOFLO was a (subsequently registered) trademark of plaintiff. *Id.* at 1195. Here, in contrast, Tel–Save had been Talk's corporate name since 1989.

The *Flow Control* court found that the facts related to determining "likelihood of confusion" were undisputed and all favored plaintiff in that: (1) the marks were identical; (2) the SKOFLO mark was distinctive and indicative of the source of plaintiff's products; (3) defendants used plaintiff's mark to sell a competing line of products; (4) there was evidence of actual confusion; (5) defendants intentionally used plaintiff's mark to generate interest in their own product; and (6) both companies used the world-wide web and suppliers to market their products to a limited customer base. *Id.* at 1199. The court found that "defendants used plaintiff's mark in such a way as to divert people looking for SKOFLO products to the A & H website, thereby improperly benefiting from the goodwill that plaintiff developed in its mark." *Id.* at 1200 (citing *Brookfield Communs., Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1062 (9th Cir.1999) (holding use of plaintiff's registered "inherently distinctive" mark MOVIEBUFF in defendant's domain name moviebuff.com violated the Lanham Act)). Here, there is no evidence that the public associates the Telsave mark with ISI rather than Talk. As noted, Telsave and variations thereof were never the corporate name of ISI; nor is there any evidence of actual confusion.

ISI has also contended that for "a period of at least three years the defendants blocked off access for defendant AOL's 33 million subscribers to plaintiff's web site." (Opp. Mem. at 14). There is no evidence that anyone became a Talk customer through this keyword. (Defendants' Rule 56.1 Statement, ¶ 43). There is no evidence that anyone who sought to become an ISI customer was sent to Talk's website, much less became a Talk customer, *id.* ¶¶ 45, 47, or that Defendants set out intentionally to cause confusion or mistake, or to deceive the public as to the source of their services. There is also no evidence that Defendants spent substantial funds in an effort to deceive customers and influence their purchasing decisions, *i.e.*, to purposely palm off their services or goods as those of plaintiffs. *Mattel, Inc. v. Robarb's Inc.*, 139 F.Supp.2d 487, 492 (S.D.N.Y.2001) (quoting *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 706–07 (2d Cir.1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680

(1971)). The element of good faith favors the Defendants.

### 7. The Quality Of The Defendant's Product Or Services

This factor is neutral.

### 8. The Sophistication Of The Buyers

In *Merriam–Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir.1994), the court stated: "In assessing this factor, one must look to 'the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.'" This factor is "based upon a notion that unsophisticated buyers increase the likelihood of confusion." *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1228 (2d Cir.1987). There is no evidence concerning the sophistication of potential purchasers, or lack thereof, so this factor is neutral.

▉ Balancing the *Polaroid* factors, it is not likely that consumers were confused as to the source of the Defendants' services.

▉ Finally, the Second Circuit held long ago that "[t]o recover damages or profits, whether for infringement of a trademark or for unfair competition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's." *G.H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499, 501 (2d Cir.1944). More recently, it reaffirmed this position:

> Our case law "is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, … or that the defendant's

actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion."

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 493 (2d Cir.1998) (quoting *George Basch Co. v. Blue Coral Inc.*, 968 F.2d 1532, 1537 (2d Cir.1992)).

In affirming the lower court's dismissal of an action brought under 43(a) of the Act, 15 U.S.C. § 1125(a), our Circuit has held that it was the burden of plaintiff to introduce evidence of actual consumer confusion, and that in the absence of such evidence, the claim must be dismissed, absent proof of intent to deceive. *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271–72 (2d Cir.1987). Similarly in *George Basch*, the Second Circuit held that a finding of willful deceptiveness is "a prerequisite for awarding profits," and that a plaintiff is not entitled to money damages if it is unable to establish that "were it not for defendant's infringement, the defendant's sales would otherwise have gone to plaintiff." *George Basch*, 968 F.2d at 1537–38.

Here, there is no evidence of actual confusion, money damages, or willful deception. As to the entries of the keywords Telsave or Telsave.com, there is no evidence that any of them intended to go to ISI's website, a website that does not appear on ISI's sole marketing material. In the absence of such evidence, ISI's request for monetary damages pursuant to 15 U.S.C. § 1125(a) is dismissed.

### The State Unfair Competition Claim Is Dismissed

▉ ISI has urged the exercise of supplemental jurisdiction by the Court. (Pltf. Memo in Opp., p. 17). Such an exercise is appropriate under the principles set down in *Briarpatch Limited L.P. v. Phoenix*

*Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).

The elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims. *TCPIP Holding Co. v. Haar Communications*, No. 99 Civ. 1825(RCC), 2004 WL 1620950 at *6, 2004 U.S. Dist. LEXIS 13543, at *18 (S.D.N.Y. July 19, 2004); *see also, Federal Express Corp. v. Fed. Expresso Inc.*, 201 F.3d 168, 174–75 (2d Cir.2000) (finding analysis under section 360–1 generally similar to analysis under Section 43(c) of Lanham Act); *Bristol–Myers*, 973 F.2d at 1049 (noting New York's anti-dilution statute protects only "extremely strong" marks); *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir.1982) ("The heart of a successful claim based upon ... the Lanham Act ... and common law trademark infringement is the showing of likelihood of confusion as to the source or sponsorship of defendant's products"). In addition, to succeed on the merits of a "common law claim of unfair competition, [a plaintiff] must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating [the defendant's] bad faith." *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891(HB), 2004 WL 1375277, 2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 18, 2004).

Since the Lanham Act claim will be dismissed, and since ISI is unable to show any bad faith on the part of the Defendants, ISI's common law claims must also be dismissed.

### The New York Gen. Bus Law § 360–1 Claim Is Dismissed

N.Y. Gen. Bus. Law § 360–1 states in relevant part that:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark ... shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

*See* N.Y. Gen. Bus. Law § 360–1 (McKinney Supp.2004).

■■■ As set forth in *U–Neek, Inc. v. Wal–Mart Stores, Inc.*, 147 F.Supp.2d 158, 175 (S.D.N.Y.2001): "To state a claim under § 360–1 a plaintiff must show: (1) that the plaintiff's mark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" A claim for dilution rests on the allegation that a defendant is attempting to "feed[ ] upon the business reputation of an established distinctive trade-mark or name." *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 544, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1165 (1977) (referring to Gen. Bus. Law § 368–d, the prior version of N.Y. Gen. Bus. Law § 360–1).

■■■ ISI's Telsave mark is weak, has little commercial recognition, lacks distinctive qualities, and has little or no conceptual strength. Therefore, the mark cannot qualify as a truly distinctive mark under the statute. In addition, ISI has failed to come forward with any proof that Telsave has obtained secondary meaning. It, therefore, cannot maintain a dilution claim pursuant to N.Y. Gen. Bus. Law § 360–1. *See, e.g., Christopher D. Smithers Found. v. St. Luke's Roosevelt Hosp. Center*, No. 00 Civ. 5502(WHP), 2003 WL 115234, 2003 U.S. Dist. LEXIS 373, 2003 WL 115234, at *5–*6 (S.D.N.Y. Jan.13, 2003); *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co., Inc.*, 116 F.Supp.2d 405, 413 (S.D.N.Y. 2000).

### The Accounting And Unjust Enrichment Claims Are Dismissed

An accounting for profits is normally available "only if the 'defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again.'" *Burndy Corp. v. Teledyne Industries, Inc.,* 748 F.2d 767, 772 (2d Cir.1984) (quoting *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664 (2d Cir.1970)). A finding of willfulness is an integral element of these causes of action: "In other words, a defendant becomes accountable for its profits when the plaintiff can show that, were it not for defendant's infringement, the defendant's sales would otherwise have gone to the plaintiff." *George Basch,* 968 F.2d at 1538 (citing *Burndy Corp.,* 748 F.2d at 772).

Even a finding of willfulness may not be sufficient predicate for an accounting, since a court must also consider "such familiar concerns as: (1) the degree of certainty that the defendant benefitted from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands." *George Basch,* 968 F.2d at 1540.

Since ISI has presented no evidence of any injury resulting from the Defendants' actions and has not shown any willful infringement on the part of the Defendants, it is not entitled to any damages on any theory whether it be unjust enrichment, diversion, or otherwise.

### The Tortious Interference Claim Is Dismissed

The elements of a state tortious interference claim are: (a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff. *U–Neek, Inc.,* 147 F.Supp.2d at 177 (quoting *Albert v. Loksen,* 239 F.3d 256, 274 (2d Cir.2001)).

ISI has not shown any knowledge on the part of the Defendants of its contractual relations or that any contracts were breached as a result of Defendants' actions. This claim is dismissed.

### Conclusion

For the foregoing reasons, Defendants are entitled to summary judgment dismissing the claims set forth in the amended complaint.

It is so ordered.